VIVIAN FORBURGER, APPELLANT, V. CLARENCE FORBURGER, APPELLEE.

FILED MARCH 11, 1932. No. 28128.

*Beghtol & Foe* and *J. Lee Rankin,* for appellant.

*Perrin & Kier* and *Perry, Van Pelt & Marti, contra.*

Heard before ROSE, GOOD and EBERLY, JJ., and CARTER and CHASE, District Judges.

CHASE, District Judge.

This is a suit for divorce brought by Vivian Forburger against her husband, Clarence Forburger. The wife was plaintiff below and the husband defendant, and for convenience we will refer to them as such herein.

The ground relied upon by the plaintiff for her divorce is extreme cruelty. The defendant answered denying the allegations of plaintiff's petition, and by way of cross-

petition alleged extreme cruelty, praying for a divorce from the plaintiff.

After a long and detailed trial lasting several days, the court refused a divorce to either party and ordered both the petition and cross-petition dismissed; but did find that the plaintiff was entitled to a divorce from the defendant from bed and board and entered a decree accordingly, awarding her the sum of $75 a month for separate maintenance.

The plaintiff appeals only from the monetary award allowed by the court for her separate maintenance. The defendant prosecutes a cross-appeal, not only from the order denying his divorce, but also from the decree granting the plaintiff a divorce from bed and board, and separate maintenance.

The record is quite voluminous, consisting of nearly 600 pages of typewritten matter, exclusive of a vast number of exhibits. The plaintiff, at the time she met the defendant, was married and had a husband living. The defendant was then living with his second wife, he having been previously divorced from his first. The parties seem to have been infatuated with each other from their first meeting, but, as will appear later, this infatuation was of short duration. As a result of this quite imaginary fancy, the plaintiff obtained a divorce from her husband and the defendant employed the same procedure to free himself from his wife.

These parties were married on December 23, 1929. The plaintiff is 37 years of age and has one child by her former marriage, and the defendant is 46 years of age and has three children by his first marriage. There are no children of this marriage.

A considerable portion of the record is taken up in detailing a long series of illicit relations existing between the parties prior to their marriage. The trial judge listened with commendable patience to the defendant's testimony of these premarital relations, which could not have been offered for any other purpose except to cast slander

and disgrace upon the plaintiff. Certainly the conduct of the parties prior to their marriage cannot be considered as bearing any material relation to the issues involved in a suit for dissolution of that relation. The defendant pleads his own dissolute conduct and introduces evidence in support thereof as a reason for obtaining a divorce from the plaintiff. We are aware of no principle of law or logic that will allow a party to reap any reward from his own wrongful conduct, and more especially against the other party to the suit with whom he is *particeps criminis*. This whole story convinces us that there exists between these parties such an incompatibility of disposition as would destroy all conjugal felicity, if it could be truthfully said that any had previously existed. Without the testimony presented by this record, it would be difficult for one to believe that such marked variations of human feeling could find habitation in the receptacle of a single mind. At one time we find the defendant balancing upon the pinnacle of amorous ecstasy, and at the next plunged into the lowest depths of hatred and malevolence, and while under the influence of such spells committed unwarranted acts of violence against the plaintiff, such as striking and kicking her. The plaintiff, too, seems to be capable of exhibiting a similar flexibility of temperament. At times she displays quite an uncommon affection for her husband, while at others she hurls at him vile and insulting epithets, commits assaults upon him, and finally in a fit of anger cast a stone through the window of his automobile.

The trial judge had the opportunity to observe, not only the demeanor of the parties themselves, but their witnesses, in giving their testimony, and the candor and fairness with which they testified; and after full hearing was either of the opinion that the extreme cruelty charged by both parties had not been sufficiently proved to justify a dissolution of the bonds of matrimony or that recrimination was established to such a degree that neither party was entitled to the intervention of a court of equity for

the relief sought. Both parties had the previous experience of married life, and in each instance the legitimate objects of matrimony had aborted. In the interest of society courts are justified in refusing divorces to persons who present such a history, especially when there is question as to whether the statutory grounds have been sufficiently established. The powers of a court of equity should not be employed to satisfy the mere wants or desires of the parties in order that they might be freed from a burdensome status cast upon them by law, unless good reasons therefor have been fairly established. We believe the trial court was eminently correct in denying to each of the parties an absolute divorce.

The question now left for consideration is whether or not the court erred in granting a divorce *a mensa et thoro,* and awarding separate maintenance. It appears that there is an almost total absence of affinity existing between these parties and the hope of their ever living together in an atmosphere of marital bliss has departed. The trial court, having assumed jurisdiction of the case, could render any decree determining the rights of the parties in accordance with equity and good conscience. After a review of the entire record, we would not feel justified in asserting that the trial court was incorrect in granting a divorce from bed and board. Social welfare will best be conserved by compelling parties, with histories such as these, to remain bound by the marriage ties, but if their dispositions are such that they cannot happily live together they should be permitted to live apart.

We have searched the record in vain to satisfy ourselves as to even the approximate financial worth of the defendant. The evidence showed the defendant to be a man of some wealth, but the amount thereof is veiled in uncertainty. It appears that at the time of the trial he had an income of between $14,000 to $15,000 a year as a salary from his stone business in the city of Lincoln, and in addition thereto that he had some income property, the amount and value of which is not definitely shown. It

would not be an unwarranted conclusion to draw from the facts that the defendant was, at the time his case was heard, enjoying a total income of between $16,000 and $18,000 a year. The defendant should be brought to realize that there are oftentimes financial hazards connected with matrimonial excursions such as the last one in which he finds himself involved. It would seem that an award of separate maintenance made by the trial court hardly bears a sufficient proportion to the defendant's income to be equitable. However, we should not be unmindful of the fact that business generally has suffered a diminution of profits in the last twelve months. The plaintiff, before her marriage, was a clerk in a department store and perhaps not earning as much as she asks the defendant to pay her, yet, due to the effect upon her social standing, which must follow from the airing of such salacious incidents as the defendant has insisted on bringing into this case, and from the scandal and contumely heaped upon her by the defendant, she, doubtless, has suffered some diminution in earning power. The rule to be adopted by courts in determining these questions should be only in furtherance of equity and justice, but they must be ever vigilant in order that designing women may' not successfully employ the institution of marriage as a means of future affluence. In view of all the circumstances, we conclude that an award for her separate maintenance in the amount of $125 a month is not excessive and it is hereby increased to that amount.

The plaintiff asks further that a reasonable sum be allowed her attorney for the prosecution of her appeal herein. It appears from the record that the district court has dealt with the plaintiff's attorney with reasonable liberality up to this time. The only service left to be compensated for is the preparation for the appeal in this court. The plaintiff's attorney is hereby allowed the sum of $150 to be paid by the defendant for such service.

With the modification above indicated, the judgment is affirmed.

AFFIRMED AS MODIFIED.