BARBARA SMITH, Appellant, v. HENRY SMITH, Appellee.

**HUSBAND AND WIFE:** Separate Maintenance—Cruelty—Unjustified Imputation of Unchastity. A wife, in an action for separate maintenance, will not be denied relief, other proper showings being made by her, because she has been guilty of a measure of blame herself. The greater wrong of the husband—in this case an unjustifiable imputation of unchastity on the part of the wife—may turn the scales of justice in her favor.

*Appeal from Pocahontas District Court.*—HON. N. J. LEE, Judge.

THURSDAY, APRIL 8, 1915.

REHEARING DENIED TUESDAY, OCTOBER 26, 1915.

ACTION for separate maintenance. The ground is cruel and inhuman treatment. There was a decree dismissing the petition and the plaintiff appeals.—*Reversed and Remanded.*

*Kenyon, Kelleher & O'Connor,* for appellant.

*F. C. Gilchrist* and *J. M. Berry,* for appellee.

EVANS, J.—The parties were married in Indiana, in January, 1891. The plaintiff was 17 years of age and the defendant 10 years older. For two years, they worked a rented farm in Indiana and then moved to Pocahontas county, Iowa, where they bought a little farm. Their assets at that time consisted, in the main, of about $2,000, which had been earned by the defendant prior to the marriage. They occupied the Pocahontas county farm for a period of 11 years. Meantime, they purchased additional land, until they had a total of 176 acres. At the expiration of 11 years, they moved to Fonda and rented the farm. Three or four years thereafter, they moved to the farm and there continued until the spring of 1911, when they moved to Fonda again. Three daughters were born to them, two of whom are married. The youngest is 11 years of age and is in the custody of her mother. Both parties have been concededly frugal and industrious and have contributed their full share to their material success. They have succeeded in a material sense. Their farm is valuable and is unencumbered. They have a comfortable home in Fonda and more or less personal property. They have been fortunate in many respects. They have had no bereavements in the family and no financial losses. In short, they have had no troubles except those which they have actively made for each other. Nothing is lacking to their present contentment and enjoyment of life—but love.

Plaintiff's ground of complaint is cruel treatment. The entire married life of the parties is rehearsed in the record. Many little incidents are recited that are gray with age. They are not very impressive nor very material, and we shall not dwell upon them. Our attention will be confined to two or three definite occasions.

Some of the witnesses described the defendant as a man of not many words. The manner of his testimony herein is somewhat indicative to that effect. His evidence, as it appears in the record, is not very satisfactory. It appears to have been elicited with much difficulty and in response to much

admonition by the court. Whether this was the result of
reluctance or inability, it is difficult to judge. The plaintiff
is not diffident in speech. She is outspoken and speaks her
mind readily,—perhaps too readily. The particular occasions
of trouble between the parties usually had the prelude of
debate. The plaintiff often had the affirmative. Her tempera-
ment was active. She was a hard worker. She not only did
her housework without help, but she followed her husband to
the cornfield· to help husk the corn. At such times, she
gathered her children into the cart, which she tied behind the
wagon. When the day was done, she was ready and some-
times anxious to go to the dance at some neighbor's party;
and sometimes she importuned and perhaps "nagged" the
defendant to take her there, when he would have preferred to
go to rest. For the last four or five years, she has been more
or less broken in health and is afflicted with nervous trouble.
This has probably not reduced her readiness of speech,.but
she is entitled to have the fact considered in weighing her
conduct. Whereas formerly she had a working weight of 135
pounds, she is now reduced to 115.· This suit was begun
in 1912.

Turning now to more specific details, we will go back
10 years only. In 1902, on one occasion, the defendant
inflicted some punishment upon the two older daughters.
The cause for it was rather slight—a broken saucer, resulting
from some little foolishness of the children. The plaintiff
remonstrated with the defendant, perhaps unwisely, for the
alleged severity of the punishment. The defendant was
greatly angered thereby. He was guilty at that time of very
violent conduct. He inflicted no injury upon the plaintiff,
but he struck the door several times, by which she was stand-
ing. This was done with an iron poker and resulted in the
splitting of the door panels. This conduct appears to have
been a method of giving vent to his anger. He could have
struck the plaintiff, but did not do so, although the blows
came very close to her. This conduct was, of course, cal-

culated to put her in fear. Her baby, at that time, was only a few months old. In 1905, the defendant and his father took a trip together to the Portland Exposition, leaving the plaintiff and the children at home. When the defendant returned, his brother-in-law, Crist, from Indiana, was at his home, waiting for him. He had been there three or four days, and remained for some days after defendant's return. Crist was the husband of defendant's sister. He had had some negotiations with the defendant, looking to his renting the defendant's farm for the following year. During the absence of the defendant on this trip, the plaintiff received a letter from Mrs. Crist, asking to be advised when Smith would get back, and stating that Crist would come out to see him about the farm. At about the same time, the plaintiff received a card from her husband, advising her that he would be home on September 24th. She wrote accordingly to Mrs. Crist. Crist arrived on the 24th; but defendant had changed his plans and he did not return home until a week later, and Crist waited for him. During this period, visits were made to various neighbors by Crist and the plaintiff and the children. At one neighbor's, they stayed all night, having been overtaken by a storm, and did not leave for home till the afternoon of the following day. After Crist returned, he wrote a letter to the plaintiff, which was read by all the family and which caused complaint on the part of her husband. The real contents of that letter are in dispute, being stated only from the memory of the witnesses. Taking the most favorable view of it on behalf of plaintiff, it indicated at least that she had confided to Crist at some time that the domestic relations of herself and husband were not as pleasant as they ought to be. Taking the most unfavorable view of the letter as against the plaintiff, it indicated nothing criminal. That it furnished an occasion for complaint within reasonable bounds may be assumed. But the defendant has always believed that criminal relations existed at that time between the plaintiff and Crist. He communicated his distrust to various of his neighbors at

different times. He procured from Indiana an "affidavit". What is contained in the affidavit does not appear, but it is said to reflect on Crist only, and not on the wife. How she could escape the reflection involved in such an affidavit is not explained. The defendant adheres to his belief in the guilt of his wife. It is true, as argued by his counsel, that this fact as to his present belief was testified to by him involuntarily, in that it was drawn from him by interrogatories of the court and by cross-examination. The fact remains, however, that the first witness introduced by the defendant was Jensen, who testified to the fact of the visit to his home of the plaintiff and Crist. The evidence had no pertinence in the case, except to reflect the unfavorable suspicions of the defendant. Other evidence was introduced by him of a trivial matter which had no other purpose than to reflect upon the morality of the plaintiff. The evidence in this record is wholly insufficient to justify the defendant's belief in this regard. This incident, and the attitude of the defendant thereto, have caused a continuing cloud of darkness between the parties ever since.

In February, 1911, a very serious quarrel occurred, which resulted in hard blows. The plaintiff undertook her own defense with a poker. The defendant contends that she was the aggressor and that she struck him with the poker upon the head. He concedes that he was aroused to great anger and that he struck her a hard blow in the face. He contends, however, that he did it with the open hand only. In the quarrel of words which preceded these blows, the plaintiff was not free from aggressiveness. Whether she struck the defendant or not is in dispute. That the defendant struck her hard in the face is conceded. We are not ready to believe that it was done with the open hand. The clenched fist was more consistent with the frenzy of anger which he concedes. The plaintiff left home at that time and received some medical attention. She afterwards returned to her home, but they have never since occupied the same bed.

The parties continued to live under the same roof even after suit was brought, and some unpleasant incidents occurred thereby. We shall not dwell upon them. The gulf between them has become very wide. If the plaintiff had been at all times free from the faults of provocation, there could be no question of her right to relief. We infer that the trial judge denied her relief because he deemed her partly to blame. The result thus reached, however, is something less than justice. The greater blame is clearly upon the defendant. The greatest obstacle in the way of reconciliation is the attitude of the defendant, imputing infidelity to his wife. Assuming her to be innocent, as we must upon this record, no greater cruelty could be perpetrated upon her than these imputations. It is idle for him to testify to his willingness to live with her, while professing convictions of this kind. This is an obstacle which is wholly within the control of the defendant. Assuming, therefore, that both parties have a measure of blame, it is still against good conscience to permit the husband, the stronger one, to keep the fruit of the toil of the years and to abandon the weaker one to starvation. This is to award a premium to the greater wrongdoer. She cannot be expected to return to her husband's arms while he spurns her character as to chastity. This is the serious thing in the case, so far as the possible reconciliation is concerned. The plaintiff has the custody of the minor child. The rights of the child demand proper protection of the mother.

*Husband and wife: separate maintenance: cruelty: unjustified imputation of unchastity.*

We have avoided the mention of one circumstance of great ugliness, which has been much discussed in the record. This relates to the charge of the attempted poisoning of the plaintiff by the defendant. The evidence is largely circumstantial. Some of the circumstances are very significant. The explanatory testimony of the defendant is not wholly satisfactory. And yet the chances of wrong conclusions are very great. Much depends upon a mere date. This was not

preserved, except in the casual memory of witnesses, and is in dispute. The question thus presented is serious in the highest degree. In view of the state of the record, we are disposed to leave the question undetermined. Our conclusion is that there should be separate maintenance allowed. Notwithstanding that the plaintiff has not been wholly free from fault in many of the controversies, this is not sufficient to justify or excuse the major blame which rests upon the defendant and which makes the separate maintenance for the time being at least a necessity. We think that some proper order for a reasonable monthly allowance should be made to the plaintiff. In view of the time which has elapsed since the trial was had, we think it desirable to remand the case to the district court. Additional evidence may be taken, if so ordered, on the present financial condition of the parties, and an allowance fixed accordingly.—*Reversed* and *Remanded*.

DEEMER, C. J., PRESTON and SALINGER, JJ., concur.