CLARA SINN, APPELLEE, V. GEORGE SINN, APPELLANT.

294 N. W. 381

FILED OCTOBER 18, 1940. No. 30848.

*Harvey W. Hess,* for appellant.

*Jack & Vette* and *Baldwin & Pike, contra.*

Heard before SIMMONS, C. J., EBERLY, PAINE, MESSMORE and JOHNSEN, JJ.

PAINE, J.

In an action for separate maintenance, the district court found that the wife was entitled to separate maintenance, with payments in the sum of $40 a month to be made her by the defendant.

The amended petition alleged, in brief, that the plaintiff, Clara Sinn, married the defendant at Fairbury, December 29, 1930, and conducted herself as a faithful wife, but that the defendant had used vile, vulgar, profane, and insulting language, and avoided the marital society of the plaintiff, and that defendant had, by these and other acts of cruelty, made plaintiff nervous and sick in body and mind, so that she felt obliged to leave the home of the defendant in March, 1936. Defendant gave notice that he would not pay for the necessities of life which she bought on his credit. Plaintiff had no source of income, and had been for months without support. On August 18, 1936, she sought to return to the

home of the defendant, and requested him to permit her to do so, but he paid no attention to such request. She alleged that he owned 780 acres of land, of the value of $40,000, and notes, mortgages, and other personal property in addition thereto. Her prayer was for separate maintenance at the expense of the defendant, together with attorney's fees and costs.

The answer admitted the marriage; denied allegations of extreme cruelty; alleged that she left his home without provocation on his part, and since said date has voluntarily absented herself therefrom; alleged that he is the owner of but 560 acres of land, worth not to exceed $14,000; denied that the value of his personal property is $30,000, and alleged that its value does not exceed $500.

It was further alleged in the answer that on March 26, 1936, plaintiff had filed a former petition for separate maintenance, and the defendant had filed an answer and cross-petition, asking for an absolute divorce, to which plaintiff had filed a reply and answer. The trial on the issues made by such former pleadings took place on the 22d, 23d and 24th days of June, 1936, and a decree was entered on June 24, 1936, by the resident district judge Robert M. Proudfit, finding that the plaintiff had failed to establish her cause of action, and dismissing her petition, and the court further found that the defendant had failed to establish the allegations of his cross-petition for an absolute divorce, and dismissed the same, and taxed the costs to each party. Pleadings from the former trial are attached as exhibits to the answer.

Trial was had in the case at bar before Cloyde B. Ellis, district judge, and on August 9, 1939, he entered a decree, finding that the plaintiff's offer to return was a sufficient offer under the circumstances, and that the defendant's complete disregard thereof entitled plaintiff to relief, and granted plaintiff maintenance while living separate and apart in the sum of $40 a month, beginning August, 1939, and her attorney's fee of $100 and costs.

The bill of exceptions at the second trial between these

parties disclosed that the plaintiff, Clara Sinn, was 59 years of age, and married the defendant, George Sinn, December 29, 1930, and moved out to his farm home located seven miles southeast of Belvidere, where they lived together for five years and three months. During such time they had continual marital differences, beginning about a year after they were married. The evidence disclosed that he continually used vile and profane language, which was very distressing to the plaintiff; that she could not put up with his cruelty and left his home; that after the first trial between the parties she wrote him a letter, introduced as plaintiff's exhibit No. 1, and reading as follows:

"Belvidere Nebr Aug 18—1936
"Mr. George Sinn, Alexandria Nebr.

"George—Please come to Belvidere and get me and my baggage and take me back home.

"I am ready to return but have no way to get out to the place. And no money to hire some one to take me. After the things you said about me in court. I dont know weather or not you would recive me if I did find a way to get out to the place. So I am writing this letter for you to come after me. We are still married and you will have to support me. Eather away from home or at home. I have no money and no property.

"Sincerally,

"Clara Sinn"

Plaintiff testified that she owned only the home that she lived in, for which she had paid $300, but testified that it is not worth very much at the present time; that since the first trial the defendant has made lewd and vulgar comments about the plaintiff in public places, and six men were called to the witness-stand to bring out the facts of such conversations by the defendant, which distressed and humiliated the plaintiff.

Evidence as to the value of the defendant's real estate indicated that a tract of land of 240 acres owned by the defendant, located south and west of Alexandria, Nebraska,

was worth $7,200 under present conditions; that a tract of 160 acres owned by the defendant in section 17, township 3, range 1, with a good house and barn and other improvements, was worth $45 an acre under present conditions, or $7,200; that the northeast quarter of section 34, township 4, range 1, was worth $6,400; that another piece of land, of three 40-acre tracts, was worth about $3,000; that 80 acres in section 31, township 3, range 1, was worth $40 an acre; making a total of approximately $27,000 worth of unencumbered real estate. The publisher of the Hebron Register testified that the defendant published a notice five times in his paper, reading as follows: "Will not stand responsible for any debts made only by myself. Geo. Sinn."

At the conclusion of the plaintiff's evidence, the defendant rested without introducing any evidence.

We are cited to the provision reading, "A divorce from the bonds of matrimony or from bed and board may be decreed for the cause of extreme cruelty," found in section 42-302, Comp. St. 1929. This section has been found in the laws of Nebraska since the earliest times, for it was first set out in section 7, ch. 16, Laws 1866.

Chief Justice Reese, in his opinion in *Earle v. Earle,* 27 Neb. 277, 43 N. W. 118, had the question squarely before him of whether an action for maintenance and support can be maintained in this state when not coupled with a petition for divorce, either from the bonds of matrimony or from bed and board, and said that it was a well-established rule that it was the duty of the husband to provide his family with support such as would fit his means, position, and station in life, and the wife generally has the right to use the husband's credit for the purchase of necessaries. Cases from many other states were reviewed, and it was held that courts of equity have the jurisdiction to grant the relief prayed for, even though there was no prayer for a divorce.

We are faced with the question whether the wife is living separate from her husband without her fault. It would add little to this opinion to recount all of the specific acts of cruelty which the wife suffered at the hands of her husband.

In our opinion such acts would tend to justify her in leaving him at the time she did. The letter which she wrote him on August 18, 1936, shows a willingness on her part to again take up her duties as wife in his home. Defendant argues that this letter was simply an effort to manufacture evidence on her part, and lacked all signs of affection. With this contention we do not agree. The contents of this letter and the evidence of the plaintiff appear to the court to prove an honest, sincere effort on her part to again take up her duties as wife in his home. It was not necessary for her to take her belongings to the door of his home unless she knew that he would be willing to receive her, and as he paid no attention to her offer, made in good faith, to return, he cannot now be heard to complain that she is living apart from him.

A wife living apart from her husband generally becomes entitled to alimony or separate maintenance when she offers in good faith to return to him and he refuses to accept the offer and receive the wife. The term "alimony" is not used in any technical sense, but rather as the equivalent of an allowance by a husband to a wife for her separate maintenance and support.

"Without seeking a divorce, a wife who has not violated any duty growing out of the marriage relation may maintain a suit in equity against her husband for separate maintenance, where he has violated his legal duty to support her and their children." *Keup v. Keup,* 98 Neb. 321, 152 N. W. 555. See, also, *Forburger v. Forburger,* 122 Neb. 705, 241 N. W. 279.

It is contended that the plaintiff has a little home of her own, worth about $300, and that she is not in need of support. The petition shows clearly that she is the wife of the defendant, and that he owns considerable real estate as well as other property. When these facts are shown, the plaintiff need not go farther and show that she is absolutely destitute and in starving circumstances. *Cochran v. Cochran,* 42 Neb. 612, 60 N. W. 942; *Sutherland v. Sutherland,* 132 Neb. 558, 272 N. W. 549; *McKnight v. McKnight,* 5 Neb. (Unof.) 260, 98 N. W. 62.

In this action the wife alleges sufficient grounds, and furnishes proof in support thereof, which would probably have justified the trial court in granting her a divorce, but we are faced with the situation that she did not ask for an absolute divorce; and we believe the evidence is sufficient to grant a separate maintenance, as prayed. *Pick v. Pick,* 99 Neb. 433, 156 N. W. 769; 27 Am. Jur. 23, sec. 415; *Rhoades v. Rhoades,* 78 Neb. 495, 111 N. W. 122.

After a careful examination of the pleadings and the bill of exceptions, we find that, contrary to the contention of the defendant, plaintiff's suit was well founded; that while she repudiated the marital relationship, and left the home of the defendant, she was not only free from fault, but had ample justification for her act. We find that her *bona fide* offer to return to defendant's home was not made as a cover to base a demand for alimony, but was made in good faith, and free from any improper conditions. 76 A. L. R. 1025, Ann.

In regard to the allowance, while it appears from the evidence that the defendant has real estate of the value of $27,000, yet we are left in some doubt as to the income which it produces. The court is inclined to the view that the $40 a month is too high an allowance, and the decree of the trial court is affirmed, excepting that the payments are reduced to $25 instead of $40 a month, with an allowance of $100 attorney's fees in this court, taxed to the defendant.

AFFIRMED AS MODIFIED.