## GEORGE D. RANDALL v. GRACE K. RANDALL

29 So. (2nd) 238                                    January Term, 1947
February 21, 1947                                              Division B

*C. D. Blackwell* and *Jordan Johnson,* for appellant.

*W. Q. Cain, Chas. H. Warwick, Jr.,* and *Paul W. Potter,* for appellee.

BUFORD, J.:

We have here for consideration under two appeals review of a final decree awarding separate maintenance, solicitor's fees and the right to possession of certain shares of corporate stock and also a subsequent order of sequestration of certain property of the defendant to enforce the payment of the sums of money required by the final decree.

The transcript of the record in these cases comprises more than 2200 typewritten pages when every material thing in it could have been shown by the use of less than 200 pages. There are hundreds of pages of testimony introduced only for the purpose of testing the credibility of witnesses and there is much other irrelevant and immaterial matter, all of which could have very properly been eliminated from the transcript under Rule 11, Sub-section (5).

The appellant presents five (5) questions for our consideration under the appeal from the final decree. The first question presented is:

"If a husband is living in the home under the same roof with his wife and children, eating at the same table with them, mingling with them in the home, supplying them with the necessities and comforts of life and maintaining the home, could the wife under that statement of facts successfully claim that she was living apart from her husband so as to maintain bill of complaint for alimony unconnected with divorce under Section 65.09 of the Florida Statutes, even though it may further appear that the husband and wife sleep in different rooms and have discontinued sexual relations?"

This question assumes that up to the time of filing of complainant's bill of complaint which was filed on March 1, 1944, the husband and wife were continuing to eat at the same table and generally associating together after the last incident of cruelty of which plaintiff complains occurred on January 16, 1944. There is substantial evidence in the record to show that after January 16, 1944, the defendant barely spoke to plaintiff; that they ate no meals together and that they occupied different parts of the house and did not cohabit as husband and wife.

The necessary implication is that the Chancellor found that this was the true condition.

It is the contention of appellant that under the provisions of Section 65.09 Florida Statutes 1941 (same F.S.A.) the court was without jurisdiction to enter an award of separate maintenance and attorney's fees as long as the husband and wife were residing under the same roof and as long as the husband was providing the wife with the necessities of life. Appellant has cited several cases and authorities which appear to support this view but we do not think that these cases control in the instant case. There is ample substantial evidence in the record that the husband on numerous occasions had brutally beaten, kicked, choked and otherwise assaulted the plaintiff. That during several months immediately prior to the filing of this suit defendant's mistreatment of the plaintiff had become progressively worse and

that on several occasions he had inflicted great physical pain and injury upon her. The parties had become entirely estranged; had slept in separate rooms, had eaten no meals together and had discontinued all cohabitation because of the defendant's cruel and brutal mistreatment of the plaintiff. That the home in which they lived was owned by them as an estate by the entireties; that plaintiff had no available money and had no other place where she and her four children could live.

We think the presence of the defendant in the house where the plaintiff was also living did not constitute a living together as husband and wife but that she, in contemplation of the statute, supra, was then living apart from her husband. This view is supported by note in 6 A.L.R. 66 and by opinions and judgments in the cases of Buckman v. Buckman, 176 Mass. 229, 48 L.R.A. 735; 57 N.E. 343; McIlroy v. McIlroy, 108 Mass. 458, 94 N.E. 696, Am. Cases 1912A 934; Polster v. Polster, 145 Mo. Ap. 606, 123 S.W. 81; Anshutz v. Anshutz, 16 N. J. Equity 162; Smith v. Smith, 172 Iowa 329, 151 N.W. 1085.

So we hold that there was sufficient evidence to support the right of the plaintiff to maintain the suit under Sec. 65.09, supra.

The second question presented is:

"If a wife sues her husband for alimony unconnected with divorce under Section 65.09 of the Florida Statutes, does the Chancellor in such suit have jurisdiction to determine husband and wife and require the husband to deliver up and hand over to the wife the personal property of disputed ownership, especially if the ownership of the personal property and the right of the wife to the possession thereof were not in the issues?"

There may be some doubt that generally there may be a decree for a division of property entered in a separate maintenance suit, but that is not the question presented here. In this case the wife filed her bill of complaint against the defendant for separate maintenance. The defendant answered the bill and in his answer he included counter claims, first alleging that he was entitled to a divorce against the plaintiff

on the ground of extreme cruelty and in connection therewith alleged that between November, 1942, and March, 1943, he had purchased 1000 shares of common stock of Champion Paper & Fiber Company which he had placed in his wife's name only temporarily with the intention of transferring it back to the husband's name, when and if he should return from overseas where he went in the service of the armed forces. He alleged that the shares of stock were placed in his wife's name in the contemplation of death resulting from oversea duty. . He alleged that the securities are the property of the husband and not the property of the wife and that the same was not intended as a gift to the wife. He also alleged that certain real estate was in the name of the husband and wife as an estate by. the entireties but that the wife had no interest in it and prayed that the court decree the securities to be .the. property of the defendant and that the plaintiff be required to assign and transfer the securities to the defendant. He further prayed that the lands described in the counter-claim be adjudicated to be the lands of the defendant and that plaintiff be required to execute and deliver to the defendant proper deeds conveying to him the entire title, estate and interest in the said lands.

The plaintiff answered the counter-claim and, in regard to these matters, averred:

"Answering paragraph 25 of the counter claim, the plaintiff admits that the defendant has heretofore assigned and given to her one thousand shares of common stock of Champion Paper & Fiber Company, and plaintiff asserts that such gift of said stock by the defendant to her was absolute and complete, and plaintiff denies that said. securities were merely placed in her name in contemplation of the death of the defendant. The plaintiff states that said one thousand shares of common stock of Champion Paper & Fiber Company have been duly and legally assigned and transferred to the plaintiff on the stock books of said corporation, and that all of said stock has been for several years past and now is duly issued and standing in plaintiff's name on the stock books of said corporation. The plaintiff states that said stock belongs to her absolutely and that the defendant does not

have any right, title, interest or claim in, to or upon said stock. Plaintiff denies that she has ever lived with her husband in deceit, and denies that she has ever awaited the time when property would be placed in her name; and plaintiff denies that she ever made any admission or statement to that effect.

(There appears to be no paragraph numbered 26 in the Counter-claim.)

"27. Answering paragraph 27 of the Counter-claim, the plaintiff admits that the five lots or parcels of land as described in said paragraph are owned and held by the plaintiff and defendant as estates by the entirety. The plaintiff denies that she has never performed any duty whatever beyond her ordinary duties as a housewife, and on the contrary, plaintiff states that her industry and thrift in the operation and management of the household were at all times exceptionally productive and helpful to the family in a financial way. The plaintiff states that her exceptional industry and thrift in the operation and management of the home contributed very substantially toward the production and accumulation of the funds of money with which all of these real properties were purchased. The plaintiff further states that by reason of her exceptional thrift and industry and the resultant accumulation of money with which to purchase these real properties plaintiff has and always has had since their purchase a very substantial equitable interest in and claim upon all of these pieces of real property. Plaintiff denies that she has in any way forfeited any right, title or interest in, to or upon any of said real properties. The plaintiff denies that she has lived with the defendant awaiting the time when the property would be placed in her name, and denies that she has ever made any admission to that effect, and denies that she has ever lived with the defendant in deceit, or that she has made any admission to that effect."

In the final decree the court said:

"The court finds that plaintiff and the children are entitled to the continued occupancy and use of the home place and furnishings of the parties on Coconut Row, in the town of Palm Beach, Florida, to the exclusion of the defendant.

"The court finds that there was no absolute gift to the plaintiff of 1000 shares of the capital stock of Champion Paper & Fiber Company, and that plaintiff is entitled to the possession of the stock certificate standing in her name and evidencing the ownership thereof. The court finds that there was an absolute gift to the plaintiff of the ring, bow pin, watch and watch pin now in the registry of the Court."

No other adjudication was made with reference to real property involved except that it was decreed that "Plaintiff and said children shall have the continued occupancy and possession of the home place and furnishings at Coconut Row in the town of Palm Beach, Florida."

The Chancellor found the equities to be with the plaintiff and against the defendant.

So it is seen that this involves no property settlement but amounts to a mere adjudication that the shares of stock referred to constitute the separate property of the plaintiff and that she was entitled to the possession and use thereof. The defendant himself submitted this issue to the court for adjudication and he certainly cannot be heard to complain when the court had adjudicated that issue against the contention of the defendant.

The third question presented is as follows:

"If a wife sues her husband for alimony unconnected with divorce under Section 65.09 of the Florida Statutes, does the Chancellor, in such suit, have jurisdiction to compel the defendant to leave his home where he was living with his plaintiff wife and children at the time the Bill of Complaint was filed, and to give the home over to plaintiff, permanently excluding the defendant therefrom?"

We think that while this point has never been directly passed upon in a suit of this sort in this State, the court of Equity exercising its Chancery jurisdiction has the inherent power in all controversies to enter such decree as will adjudicate complete equity between the parties. In other words, that when equity has taken hold it will adjudicate the whole controversy and render a complete and effective decree adjudicating the rights and equities of all the parties, unless there is some legal reason why this cannot be done. The purpose

of this suit was to provide for the separate maintenance of the wife and the children in her custody. The home was shown to be held as an estate by the entireties; the husband's title has not been affected by the decree but he has been decreed in effect to furnish his interest in the home to his wife and children as a part of their separate maintenance.

We have been cited to no contrary authority.

The fourth question challenges the propriety of the allowance of $7,000.00 as solicitor's fees. This is a matter which necessarily addressed itself to the sound discretion of the Chancellor and, with the evidence before him, he might have awarded a larger fee without committing reversible error. See Barough v. Giblin, 122 Fla. 59, 164 So. 831. We have approved some fees larger than this in divorce cases but we have seldom, if ever, had before us a case where the fee awarded was more substantially supported by the record than was the award here.

The fifth question challenges the correctness of the Chancellor's decree denying the defendant's prayer for divorce. It is sufficient to say that after a careful consideration of the record, we think that the Chancellor was amply justified in reaching the conclusion which he did reach and in entering the decree which he entered.

This brings us to consideration of the matter presented by the second appeal. This appeal is from an order made in the cause under the provisions of Sections 63.03 and 63.67 Fla. Statutes 1941 (same F.S.A.)

Section 59.02, sub-paragraph 3, 1945 Cumulative Supplement Fla. Statutes 1941 (same F.S.A.), provides as follows:

"3. Interlocutory Orders and Decrees in Equity.—Review of interlocutory orders and decrees in equity, including those after final decree, may be by proceedings in the nature of certiorari in the Supreme Court. This subsection shall not be construed as precluding the review of such orders and decrees on appeal from the final decree, if found more expedient. The Supreme Court may by rule regulate proceedings under this sub-section."

Our Rule 34, sub-paragraph (a) provides as follows:

"(a) Interlocutory appeals to be by Certiorari.—All appeals from interlocutory decrees as authorized by statute including orders or decrees after final decree, shall be prosecuted to this court by certiorari in the manner provided by the rules relating to the constitutional writ of certiorari. This rule shall not preclude the review of such orders and decrees on final decree, if found more expedient."

Regardless of the above quoted statute and the above quoted Rule, appellant has proceeded by appeal rather than by petition for certiorari to review the order complained of. If this had been brought to our attention by motion to dismiss timely made and presented, appeal would have been dismissed; but, as the notice of appeal gives this court jurisdiction and no timely motion has been made to dismiss and the departure from the rule was not called to our attention until the cause was presented on its merits, we are inclined to treat the appeal as a petition for certiorari under Rule 34 and dispose of the merits as we did, for other reasons, in the case of Eristavi-Tchitcherine et al. v. Miami Beach Federal Savings & Loan Association et al., 154 Fla. 100, 16 So. (2nd) 730.

The first question presented by appellant challenges the action of the Chancellor in granting an injunction and receivership without bond when there was no allegation in the complaint that the complainant is unable to give bond or indemnity or other security.

The appellant bases his contention on the provisions of Section 64.03 Fla. Statutes 1941 (same F.S.A.). We do not think this section of the statute is involved in this proceeding. As hereinbefore stated, petitioner brought himself fully within the purview of the provisions of Section 63.07, supra, and that section does not require the giving of any bond by the petitioner to procure an order, the sole purpose of which is to enforce a final decree.

The second question challenges the action of the Chancellor in entering the order complained of without notice. The record shows that the defendant was willfully in default in the payment of the substantial amount of installments of

alimony and suit money for the wife and minor children which were required to be paid by defendant to the plaintiff under the final decree and also defendant had willfully defaulted in the payment of the attorney's fees as required by the final decree and in the delivery of plaintiff's stock to her as required by the final decree. Also the record shows that rule to show cause why the defendant should not be adjudged guilty of contempt of court had been issued against the defendant and after hearing upon this rule judgment was entered convicting the defendant of contempt and adjudging that he be imprisoned in the county jail for ninety days. The rule to show cause was returned non est inventus by the sheriffs of both Palm Beach and Orange Counties, Florida. It further shows that a few weeks after the entry of the final decree defendant absconded from the State of Florida and since that time he has absented and concealed himself beyond the limits of the State of Florida for the sole purpose of delaying and obstructing the enforcement of the final decree and avoiding process and arrest for the contempt conviction. The order was entered without notice. No notice was necessary in such case. See In Re Burkhardt v. Circuit Court etc., 146 Fla. 157, 1 So. (2nd) 872.

In the case of Thompson v. Thompson, 142 Fla. 643, 195 So. 571, a simple notice was given by registered mail to the husband that the wife was about to proceed under the provisions of Sections 3 and 677 of Chapter 14658 but there is nothing in that opinion to be construed to mean that any notice is required to be given an absconding husband in such cases.

The third question presents the same contention which was presented under the first question and shall be disposed of in the same manner in which we have disposed of that.

The fourth question challenges the action of the Chancellor in entering the order enjoining parties not parties to the proceeding without requiring such parties to be made parties to the proceeding either by notice, service of process, constructive service or by other plenary action. It is sufficient to say that none of such parties are here complaining. The order shows that those parties who were enjoined were the

alleged agents of the defendant and were enjoined as such agents. We observe nothing which requires notice to be given them in this proceeding.

We find no error in this order.

The appellee has petitioned this court for an order requiring the appellant to pay additional solicitor's fees for the services of her solicitor on these appeals. On consideration of the petition, it is ordered and adjudged that the appellant pay to the plaintiff, or to her solicitor for her benefit, the sum of $1,000.00 as additional fees for the service of such solicitor in this court and that the Chancellor shall make such orders and decrees in the lower court as may be necessary to enforce the payment of this sum, together with all other sums which by the decrees appealed from have been found to be due to the appellee, or which may be found to be due to the appellee under the terms of the final decree.

The decrees are affirmed.

So ordered.

THOMAS, C. J., ADAMS and BARNS, JJ., concur.