LYDIA McGUIRE, APPELLEE, V. CHARLES W. McGUIRE, APPELLANT.

59 N. W. 2d 336

Filed June 26, 1953. No. 33305.

*Mark J. Ryan* and *Charles E. McDermott,* for appellant.

*H. D. Addison,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

The plaintiff, Lydia McGuire, brought this action in equity in the district court for Wayne County against Charles W. McGuire, her husband, as defendant, to recover suitable maintenance and support money, and for costs and attorney's fees. Trial was had to the court and a decree was rendered in favor of the plaintiff.

The district court decreed that the plaintiff was legally entitled to use the credit of the defendant and obligate him to pay for certain items in the nature of improvements and repairs, furniture, and appliances for the household in the amount of several thousand dollars; required the defendant to purchase a new automobile with an effective heater within 30 days; ordered him to pay travel expenses of the plaintiff for a visit to each of her daughters at least once a year; that the plaintiff be

entitled in the future to pledge the credit of the defendant for what may constitute necessaries of life; awarded a personal allowance to the plaintiff in the sum of $50 a month; awarded $800 for services for the plaintiff's attorney; and as an alternative to part of the award so made, defendant was permitted, in agreement with plaintiff, to purchase a modern home elsewhere.

The defendant filed a motion for new trial which was overruled. From this order the defendant perfected appeal to this court.

For convenience we will refer to the parties as they are designated in the district court.

The record shows that the plaintiff and defendant were married in Wayne, Nebraska, on August 11, 1919. At the time of the marriage the defendant was a bachelor 46 or 47 years of age and had a reputation for more than ordinary frugality, of which the plaintiff was aware. She had visited in his home and had known him for about 3 years prior to the marriage. After the marriage the couple went to live on a farm of 160 acres located in Leslie precinct, Wayne County, owned by the defendant and upon which he had lived and farmed since 1905. The parties have lived on this place ever since. The plaintiff had been previously married. Her first husband died in October 1914, leaving surviving him the plaintiff and two daughters. He died intestate, leaving 80 acres of land in Dixon County. The plaintiff and each of the daughters inherited a one-third interest therein. At the time of the marriage of the plaintiff and defendant the plaintiff's daughters were 9 and 11 years of age. By working and receiving financial assistance from the parties to this action, the daughters received a high school education in Pender. One daughter attended Wayne State Teachers College for 2 years and the other daughter attended a business college in Sioux City, Iowa, for 1 year. Both of these daughters are married and have families of their own.

On April 12, 1939, the plaintiff transferred her in-

terest in the 80-acre farm to her two daughters. The defendant signed the deed.

At the time of trial plaintiff was 66 years of age and the defendant nearly 80 years of age. No children were born to these parties. The defendant had no dependents except the plaintiff.

The plaintiff testified that she was a dutiful and obedient wife, worked and saved, and cohabited with the defendant until the last 2 or 3 years. She worked in the fields, did outside chores, cooked, and attended to her household duties such as cleaning the house and doing the washing. For a number of years she raised as high as 300 chickens, sold poultry and eggs, and used the money to buy clothing, things she wanted, and for groceries. She further testified that the defendant was the boss of the house and his word was law; that he would not tolerate any charge accounts and would not inform her as to his finances or business; and that he was a poor companion. The defendant did not complain of her work, but left the impression to her that she had not done enough. On several occasions the plaintiff asked the defendant for money. He would give her very small amounts, and for the last 3 or 4 years he had not given her any money nor provided her with clothing, except a coat about 4 years previous. The defendant had purchased the groceries the last 3 or 4 years, and permitted her to buy groceries, but he paid for them by check. There is apparently no complaint about the groceries the defendant furnished. The defendant had not taken her to a motion picture show during the past 12 years. They did not belong to any organizations or charitable institutions, nor did he give her money to make contributions to any charitable institutions. The defendant belongs to the Pleasant Valley Church which occupies about 2 acres of his farm land. At the time of trial there was no minister for this church so there were no services. For the past 4 years or more, the defendant had not given the plaintiff money to purchase

furniture or other household necessities. Three years ago he did purchase an electric, wood-and-cob combination stove which was installed in the kitchen, also linoleum floor covering for the kitchen. The plaintiff further testified that the house is not equipped with a bathroom, bathing facilities, or inside toilet. The kitchen is not modern. She does not have a kitchen sink. Hard and soft water is obtained from a well and cistern. She has a mechanical Servel refrigerator, and the house is equipped with electricity. There is a pipeless furnace which she testified had not been in good working order for 5 or 6 years, and she testified she was tired of scooping coal and ashes. She had requested a new furnace but the defendant believed the one they had to be satisfactory. She related that the furniture was old and she would like to replenish it, at least to be comparable with some of her neighbors; that her silverware and dishes were old and were primarily gifts, outside of what she purchased; that one of her daughters was good about furnishing her clothing, at least a dress a year, or sometimes two; that the defendant owns a 1929 Ford coupé equipped with a heater which is not efficient, and on the average of every 2 weeks he drives the plaintiff to Wayne to visit her mother; and that he also owns a 1927 Chevrolet pickup which is used for different purposes on the farm. The plaintiff was privileged to use all of the rent money she wanted to from the 80-acre farm, and when she goes to see her daughters, which is not frequent, she uses part of the rent money for that purpose, the defendant providing no funds for such use. The defendant ordinarily raised hogs on his farm, but the last 4 or 5 years has leased his farm land to tenants, and he generally keeps up the fences and the buildings. At the present time the plaintiff is not able to raise chickens and sell eggs. She has about 25 chickens. The plaintiff has had three abdominal operations for which the defendant has paid. She selected her own doctor, and there were no restrictions placed

in that respect. When she has requested various things for the home or personal effects, defendant has informed her on many occasions that he did not have the money to pay for the same. She would like to have a new car. She visited one daughter in Spokane, Washington, in March 1951 for 3 or 4 weeks, and visited the other daughter living in Fort Worth, Texas, on three occasions for 2 to 4 weeks at a time. She had visited one of her daughters when she was living in Sioux City some weekends. The plaintiff further testified that she had very little funds, possibly $1,500 in the bank which was chicken money and money which her father furnished her, he having departed this life a few years ago; and that use of the telephone was restricted, indicating that defendant did not desire that she make long distance calls, otherwise she had free access to the telephone.

It appears that the defendant owned 398 acres of land with 2 acres deeded to a church, the land being of the value of $83,960; that he has bank deposits in the sum of $12,786.81 and government bonds in the amount of $104,500; and that his income, including interest on the bonds and rental for his real estate, is $8,000 or $9,000 a year. There are apparently some Series E United States Savings Bonds listed and registered in the names of Charles W. McGuire or Lydia M. McGuire purchased in 1943, 1944, and 1945, in the amount of $2,500. Other bonds seem to be in the name of Charles W. McGuire, without a beneficiary or co-owner designated. The plaintiff has a bank account of $5,960.22. This account includes deposits of some $200 and $100 which the court required the defendant to pay his wife as temporary allowance during the pendency of these proceedings. One hundred dollars was withdrawn on the date of each deposit.

The facts are not in dispute.

The defendant assigns as error that the decree is not supported by sufficient evidence; that the decree is contrary to law; that the decree is an unwarranted

usurpation and invasion of defendant's fundamental and constitutional rights; and that the court erred in allowing fees for the plaintiff's attorney.

While there is an allegation in the plaintiff's petition to the effect that the defendant was guilty of extreme cruelty towards the plaintiff, and also an allegation requesting a restraining order be entered against the defendant for fear he might molest plaintiff or take other action detrimental to her rights, the plaintiff made no attempt to prove these allegations and the fact that she continued to live with the defendant is quite incompatible with the same.

The plaintiff relies upon the following cases from this jurisdiction which are clearly distinguishable from the facts in the instant case as will become apparent.

In the case of Earle v. Earle, 27 Neb. 277, 43 N. W. 118, 20 Am. S. R. 667, the plaintiff's petition alleged, in substance, the marriage of the parties, that one child was born of the marriage, and that the defendant sent his wife away from him, did not permit her to return, contributed to her support and maintenance separate and apart from him, and later refused and ceased to provide for her support and the support of his child. The wife instituted a suit in equity against her husband for maintenance and support without a prayer for divorce or from bed and board. The question presented was whether or not the wife should be compelled to resort to a proceedings for a divorce, which she did not desire to do, or from bed and board. On this question, in this state the statutes are substantially silent and at the present time there is no statute governing this matter. The court stated that it was a well-established rule of law that it is the duty of the husband to provide his family with support and means of living—the style of support, requisite lodging, food, clothing, etc., to be such as fit his means, position, and station in life—and for this purpose the wife has generally the right to use his credit for the purchase of necessaries. The court held that if

a wife is abandoned by her husband, without means of support, a bill in equity will lie to compel the husband to support the wife without asking for a decree of divorce.

In the case of Cochran v. Cochran, 42 Neb. 612, 60 N. W. 942, Mrs. Cochran was a school teacher in Wisconsin. Her husband came to Nebraska and decided to get a divorce. He did, secretly and fraudulently, on the theory that his wife abandoned him. The court held: "A court of equity will entertain an action brought for alimony alone, and will grant the same, although no divorce or other relief is sought, where the wife is separated from the husband without her fault."

In the case of Chapman v. Chapman, 74 Neb. 388, 104 N. W. 880, the wife brought an action for separate maintenance only. The court entertained the action saying there was enough in the record to show, and indeed it was not disputed, that defendant deserted his wife a short time after marriage and about 10 years before the action was brought.

In Price v. Price, 75 Neb. 552, 106 N. W. 657, the defendant abandoned the plaintiff, his wife, and refused and neglected to provide further for her support and maintenance. The court held: "It is the duty of the husband to provide for the reasonable support and maintenance of his wife during the continuance of the marriage relation; and, when the husband without just cause fails to provide for the support and maintenance of the wife, she may maintain an action against him for reasonable maintenance, unless by her own act of abandonment of the husband's domicile, or some other act wholly inconsistent with her duty as his wife, she has forfeited her right to such maintenance."

In the case of Brewer v. Brewer, 79 Neb. 726, 113 N. W. 161, 13 L. R. A. N. S. 222, the plaintiff lived with her husband and his mother. The mother dominated the household. The plaintiff went to her mother. She stated she would live in the same house with her husband and his mother if she could have control of her part of the

house. The defendant did not offer to accede to these conditions. The court held that a wife may bring a suit in equity to secure support and alimony without reference to whether the action is for divorce or not; that every wife is entitled to a home corresponding to the circumstances and condition of her husband over which she may be permitted to preside as mistress; and that she does not forfeit her right to maintenance by refusing to live under the control of the husband's mother.

The case of Rhoades v. Rhoades, 78 Neb. 495, 111 N. W. 122, 126 Am. S. R. 611, lends no support to the plaintiff's contention.

In Sinn v. Sinn, 138 Neb. 621, 294 N. W. 381, the court said that a wife living apart from her husband generally becomes entitled to alimony or separate maintenance when she offers in good faith to return to him and he refuses to accept the offer and receive his wife. The plaintiff left the defendant's home due to violent and indecent language he used, then subsequently made a bona fide offer to return, which he rejected. This court held that she had a right to maintain a suit for separate maintenance and support without seeking a divorce, in line with the previous cases here referred to.

The case of Scott v. Scott, 153 Neb. 906, 46 N. W. 2d 627, 23 A. L. R. 2d 1431, is to the same effect as the preceding cases with reference to the right of a wife to bring action in equity for separate maintenance where the husband has violated his legal duty to support her. We deem it unnecessary to cite the factual circumstances in this case. It is in no manner analogous to the facts in the instant case and clearly distinguishable.

The plaintiff also relies on the case of Bucknam v. Bucknam, 176 Mass. 229, 57 N. E. 343, 49 L. R. A. 735, and the following cases which we analyze. In this case there was a statute which enumerated three classes of cases in which the court might make an order concerning the support of a wife. In this state there is no

such statute. The condition pertinent to the decision in the cited case was as follows: When a husband fails, without just cause, to furnish suitable support for his wife, or has deserted her, or when the wife for justifiable cause is actually living apart from her husband. The facts disclosed that the parties did not occupy the same room or bed, did not eat together, nor have any conversation except such as was absolutely necessary, although she cooked the food furnished by him for both. The facts also showed that she was in great need of clothing, medicine, and other things which he refused to furnish. The court entertained the action under the statute.

In the case of Smith v. Smith, 172 Iowa 329, 151 N. W. 1085, the defendant's wife left home after a serious quarrel and after her husband struck her. There had been difficulty between the parties, the husband believing the wife to be untrue to him. Later the wife returned to the home. The parties never occupied the same bed. They continued to live under the same roof after suit was brought. Unpleasant instances occurred. The gulf between them was very wide, and the greatest obstacle to reconciliation was the belief of the husband imputing infidelity to his wife. The case was remanded and a monthly allowance was suggested with additional evidence to be taken in the district court. This evidence disclosed that the husband became violently angry, severely punished the children, struck the door near which the wife was standing several times with a poker splitting the door panels, and on another occasion he became convinced, without sufficient evidence, that the wife was untrue to him, communicated his distrust to various of his neighbors, made some investigation, and on trial admitted that he had adhered to such belief. On another occasion he struck his wife a blow in the face during a quarrel. She defended herself with a poker. The court entertained the action for separate maintenance and support without a divorce. The wife

had done her part in accruing the material things of life. This is a far different factual situation than in the instant case.

In the case of Polster v. Polster, 145 Mo. App. 606, 123 S. W. 81, the evidence disclosed that the husband drank considerably, came home under the influence of intoxicating liquor, abused his wife, and struck her with his fist several times, on occasion blacking one of her eyes. He became enamored of another woman and went with her frequently, telling persons he was a single man and intended to marry her. He spent money entertaining her and gave her presents. The evidence was held sufficient to render his wife's condition in life intolerable. The court said where the husband's conduct is such as to render the wife's condition unendurable in his home she may leave the home without forfeiting her right to maintain an action for maintenance against him under a statute which was in existence in the State of Missouri. The court went on to say that where the husband has been guilty both of maltreatment of his wife and refusal to support her, the wife does not forfeit her right of action for maintenance merely because she lives under the same roof with her husband, if she lives separate and apart from him; and that while there may not be an abandonment of the wife by the husband from a physical point of view, there is an abandonment of the obligation resting upon the husband to provide for the support of the wife. The court held the evidence sufficient to sustain a judgment for support of the child and wife on the ground of abandonment and failure to support, and entered a judgment accordingly. The parties did not live as husband and wife. They occupied separate apartments in the house. The wife continued to reside in the house constituting their home to the day the suit was instituted.

In the case of Randall v. Randall, 158 Fla. 502, 29 So. 2d 238, the court held that a wife, continuing to live in the same house as the husband, with whom she

owned it by entireties, after his last act of cruelty, because of which she brought suit for separate maintenance, but sleeping in separate rooms, eating no meals with her husband and discontinuing cohabitation with him, lived apart from him as required to obtain separate maintenance. Such a suit was authorized. The evidence disclosed that the husband on numerous occasions had brutally kicked, choked, and otherwise assaulted his wife. During several months immediately prior to the filing of this suit the defendant's mistreatment of the plaintiff had become progressively worse, and on several occasions he had inflicted great physical pain and injury upon his wife. The parties had become entirely estranged. The home they lived in was owned by them as an estate by the entireties. The plaintiff had no available money and had no place where she and her children could live. The court entertained the action for separate maintenance and support.

It becomes apparent that there are no cases cited by the plaintiff and relied upon by her from this jurisdiction or other jurisdictions that will sustain the action such as she has instituted in the instant case.

With reference to the proposition that the parties are living under the same roof, we have set forth the cases of Randall v. Randall, *supra*, Smith v. Smith, *supra,* Bucknam v. Bucknam, *supra,* and Polster v. Polster, *supra.* To these may be added other cases from foreign jurisdictions such as Anshutz v. Anshutz, 16 N. J. Eq. 162, in which it was said that while a wife had no right to the interference of the court for her maintenance until her abandonment or separation, there might be an abandonment or separation, within the sound construction of the statute, while the parties continued to live under the same roof, as where the husband utterly refused to have intercourse with his wife, or to make any provision for her maintenance, and thus he might seclude himself in a portion of his house, take his meals alone or board elsewhere than in his house, and so as

effectively separate himself from his wife and refuse to provide for her as in case of actual abandonment, although in whatever form it might exist there must be an abandonment. Other cases are cited from the same jurisdiction to the same effect. See, also, Sutton v. Sutton, 145 Wash. 542, 260 P. 1076.

There are also several cases, under statutes of various states, in which separate maintenance was refused the wife, where the husband and wife were living in the same house. These cases are to the effect that it is an indispensable requirement of a maintenance statute that the wife should be living separate and apart from her husband without her fault, and that therefore, a wife living in the same house with her husband, occupying a different room and eating at a different time, was not entitled to separate maintenance. See Lowe v. Lowe, 213 Ill. App. 607.

And, as said in Rathmann v. Rathmann, 196 Ill. App. 20, in a suit for separate maintenance it must appear that the parties were actually living separate and apart at the time the bill was filed, and that a finding that the parties were living apart was not sustained by the evidence that the wife was compelled to cease her relationship with the husband as his wife, although continuing to live under the same roof, each occupying a separate room, there being no evidence as to whether or not during this period the parties ate at the same table or met in the family living room, or that in any way the relationship was changed, save the fact that they did not occupy the same room. See, also, Jones v. Jones, 233 Ala. 642, 173 So. 49; Klemme v. Klemme, 37 Ill. App. 54; Bamberg v. Bamberg, 123 N. J. Eq. 570, 199 A. 54; Annotation, 10 A. L. R. 2d 525.

In the instant case the marital relation has continued for more than 33 years, and the wife has been supported in the same manner during this time without complaint on her part. The parties have not been separated or living apart from each other at any time. In the light

of the cited cases it is clear, especially so in this jurisdiction, that to maintain an action such as the one at bar, the parties must be separated or living apart from each other.

The living standards of a family are a matter of concern to the household, and not for the courts to determine, even though the husband's attitude toward his wife, according to his wealth and circumstances, leaves little to be said in his behalf. As long as the home is maintained and the parties are living as husband and wife it may be said that the husband is legally supporting his wife and the purpose of the marriage relation is being carried out. Public policy requires such a holding. It appears that the plaintiff is not devoid of money in her own right. She has a fair-sized bank account and is entitled to use the rent from the 80 acres of land left by her first husband, if she so chooses.

The next question to be determined is whether or not the plaintiff is entitled to recover attorney's fees as costs in this action.

It is said in Higgins v. Case Threshing Machine Co., 95 Neb. 3, 144 N. W. 1037: "It is the practice in this state to allow the recovery of attorneys' fees only in such cases as are provided for by law, or where the uniform course of procedure has been to allow such recovery. As a general rule of practice in this state, attorneys' fees are allowed to the successful party in litigation only where such allowance is provided by statute." See, also, State ex rel. Charvat v. Sagl, 119 Neb. 374, 229 N. W. 118; Voss v. Voss, 144 Neb. 819, 14 N. W. 2d 849; Shepard v. Shepard, 145 Neb. 12, 15 N. W. 2d 195; Hawkeye Casualty Co. v. Stoker, 154 Neb. 466, 48 N. W. 2d 623.

The case of Kiddle v. Kiddle, 90 Neb. 248, 133 N. W. 181, 36 L. R. A. N. S. 1001, Ann. Cas. 1913A 796, is relied upon by the plaintiff, wherein this court said: "It is the settled rule in this court that in a suit by a wife for separate maintenance, or for alimony alone, the court may at any time during the pendency of the

suit make allowance to the wife of a reasonable sum as suit money, including attorney's fees, to be paid by the husband as the court may direct." As authority for this statement, Earle v. Earle, *supra,* Cochran v. Cochran, *supra,* and Brewer v. Brewer, *supra,* are cited.

There being no legal basis for the plaintiff's action as required by the law of this jurisdiction, an allowance of attorney's fees is erroneous and not authorized.

For the reasons given in this opinion, the judgment rendered by the district court is reversed and the cause remanded with directions to dismiss the cause.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.

YEAGER, J., dissenting.

I respectfully dissent. In doing so I do not question the correctness of the statement of facts set forth in the majority opinion. I, however, do not think some important considerations have received appropriate emphasis. Therefore I shall present the dissent as I think the opinion should be, including a statement of facts.

This is an action in equity by Lydia McGuire, plaintiff and appellee, against Charles W. McGuire, defendant and appellant, wherein the plaintiff seeks suitable maintenance from the defendant. The two are husband and wife.

The parties were married in 1919 and have lived ever since in the farm home provided by defendant in Wayne County, Nebraska. At the time of trial plaintiff was 66 and the defendant 79 years of age. No children were born of the marriage. Plaintiff has two daughters by a former marriage. At the time of the marriage defendant owned 160 acres of land and since that time he has accumulated by inheritance and by purchase 240 additional acres. Two acres are occupied by a church. The value of the land at the time of trial was about $84,000. The rental value was at least $6,000. At the time of the trial the defendant owned $104,500 worth of United States Government bonds. He had in certificates of

deposit and checking accounts $12,768.31. His other personal property was of negligible value. These values are not in dispute.

It appears well to point out here that in this record there is no factual dispute of any kind. The defendant has allowed every statement made by plaintiff on the trial as to his conduct and actions toward her and the testimony of her witnesses as to the value of property to stand unchallenged. ·

At the time of the marriage plaintiff had a one-third interest in 80 acres of land left by her former husband. Later this interest was transferred to her two daughters. At the time of trial she had a bank account jointly with one of her daughters in the amount of $5,960.22.

This accumulated amount did not come from any contributions made by the defendant. It doubtless came in large part, if not entirely, from eggs and chickens produced and sold by plaintiff and from the income from the 80-acre farm. It appears that she was in general charge of this farm for her daughters and was permitted to use the proceeds.

From the beginning of the married life of the parties the defendant supplied only the barest necessities and there was no change thereafter. He did not even buy groceries until the last 3 or 4 years before the trial, and neither did he buy clothes for the plaintiff.

As long as she was able plaintiff made a garden, raised chickens, did outside chores, and worked in the fields. From the sale of chickens and eggs she provided groceries, household necessities, and her own clothing. These things she is no longer able to do, but notwithstanding this the defendant does no more than to buy groceries. He buys her no clothing and does not give her any money at all to spend for her needs or desires. Only one incident is mentioned in the record of defendant ever buying plaintiff any clothing. He bought her a coat over 3 years before the trial.

The house in which the parties live is supplied with

electricity and there is a gas refrigerator, otherwise it is decidedly not modern.

On these facts the district court decreed that plaintiff was legally entitled to use the credit of defendant and to obligate him to pay for a large number of items, some of which were in the nature of improvements and repairs to the house and some of which were furniture and appliances to be placed in the home. The total cost of these improvements and additions, as is apparent from the decree, would amount to several thousand dollars. As an alternative to a part of this the defendant was permitted, in agreement with plaintiff, to purchase a modern house elsewhere. The defendant was ordered to purchase a new automobile with an effective heater within 30 days. He was ordered to pay traveling expenses of plaintiff for a visit to each of her daughters at least once each year. It was decreed that plaintiff was entitled in the future to pledge the credit of defendant for what may constitute necessaries of life. The plaintiff was awarded a personal allowance in the amount of $50 a month. An award of $800 was made for services for plaintiff's attorney.

As grounds for reversal necessary to be considered herein the defendant says that the decree is not supported by sufficient evidence; that the decree is contrary to law; that the decree is an unwarranted usurpation and invasion of the defendant's fundamental and constitutional rights; and that the court erred in allowing fees for plaintiff's attorney.

In support of these assignments the defendant urges that there is no legal or equitable basis or authority for the maintenance of this action or one such as this. Substantially he says that these parties are husband and wife; that they are living together as such; and that plaintiff is not seeking separation or separate maintenance, therefore no relief is available to the plaintiff through the court.

There is and can be no doubt that, independent of stat-

utes relating to divorce, alimony, and separate maintenance, if this plaintiff were living apart from the defendant she could in equity and on the facts as outlined in the record be awarded appropriate relief.

The principle supporting the right of a wife to maintain an action in equity, independent of statute, for maintenance was first announced in this jurisdiction in Earle v. Earle, 27 Neb. 277, 43 N. W. 118, 20 Am. S. R. 667. In the opinion it was said: "While the statute books of this and other states amply provide for the granting of divorces in meritorious cases, yet we do not apprehend that it is the purpose of the law to compel a wife, when the aggrieved party, to resort to this proceeding, and thus liberate her husband from all obligations to her, in order that the rights which the law gives her, by reason of her marital relations with her husband, may be enforced. Such a conclusion would not generally strike the conscience of a court of equity as being entirely equitable."

Further in the opinion and in determination of the question it was said: "But however that may be, we are of the opinion that courts of equity should have and do have the jurisdiction to grant relief in cases of this kind without reference to the statutes of the state, but by and through the jurisdiction growing out of the general equity powers of the court."

The principle involved was reannounced in the following cases: Cochran v. Cochran, 42 Neb. 612, 60 N. W. 942; Chapman v. Chapman, 74 Neb. 388, 104 N. W. 880; Price v. Price, 75 Neb. 552, 106 N. W. 657; Rhoades v. Rhoades, 78 Neb. 495, 111 N. W. 122, 126 Am. S. R. 611; Brewer v. Brewer, 79 Neb. 726, 113 N. W. 161, 13 L. R. A. N. S. 222; Sinn v. Sinn, 138 Neb. 621, 294 N. W. 381.

The Supreme Court of Appeals of Virginia, in an exhaustive opinion, has adopted the position taken in this jurisdiction. See Heflin v. Heflin, 177 Va. 385, 14 S. E. 2d 317, 141 A. L. R. 391.

If relief is to be denied to plaintiff under this principle it must be denied because of the fact that she is not living separate and apart from the defendant and is not seeking separation.

In the light of what the decisions declare to be the basis of the right to maintain an action for support, is there any less reason for extending the right to a wife who is denied the right to maintenance in a home occupied with her husband than to one who has chosen to occupy a separate abode?

If the right is to be extended only to one who is separated from the husband equity and effective justice would be denied where a wealthy husband refused proper support and maintenance to a wife physically or mentally incapable of putting herself in a position where the rule could become available to her.

It is true that in all cases examined which uphold the right of a wife to maintain an action in equity for maintenance the parties were living apart, but no case has been cited or found which says that separation is a condition precedent to the right to maintain action in equity for maintenance. Likewise none has been cited or found which says that it is not.

In primary essence the rule contemplates the enforcement of an obligation within and not without the full marriage relationship. The reasoning contained in the opinions sustaining this right declare that purpose.

In Earle v. Earle, *supra,* it was said: "The question is, whether or not the plaintiff shall be compelled to resort to a proceeding for a divorce, which she does not desire to do, and which probably she is unwilling to do, from conscientious convictions, or, in failing to do so, shall be deprived of that support which her husband is bound to give her."

This reasoning has received the approval of this court in the later cited cases.

If there may not be resort to equity in circumstances such as these then as pointed out in the following state-

ment from Earle v. Earle, *supra,* a dim view must be taken of the powers of a court of equity: "As we have already said in substance, there is not much to commend an alleged principle of equity which would hold that the wife, with her family of one or more children to support, must be driven to going into court for a divorce when such a proceeding is abhorrent to her, or, in case of her refusal so to do, being compelled to submit to a deprivation of the rights which equity and humanity clearly give her; that, in order to obtain that to which she is clearly entitled, she must institute her action for a divorce, make her grievances public, which she would otherwise prefer to keep to herself, and finally liberate a husband from an obligation of which he is already tired, but from which he is not entitled to be relieved."

Can a principle of equity which requires a wife to leave her home before becoming able to enforce the obligation of her husband to support and maintain her receive in reason a higher commendation than the hypothesis contained in this quotation? I think not.

It is thought that the following from the same opinion should be regarded as controlling here: "It seems to us that a declaration of such a doctrine as the law of the land would place it within the power of every man, who, unrestrained by conscience, seeks to be freed from his obligations to his wife and family, by withholding the necessary comforts and support due them, to compel her to do that for him which the law would not do upon his own application."

I conclude therefore that the conclusion of the decree that the district court had the power to entertain the action was not contrary to law.

I think however that the court was without proper power to make any of the awards contained in the decree for the support and maintenance of the plaintiff except the one of $50 a month.

From the cases cited herein it is clear that a husband

has the obligation to furnish to his wife the necessaries of life. These decisions make clear that for failure to furnish them the wife may seek allowances for her support and maintenance. However neither these decisions nor any others cited or found support the view contended for by plaintiff that the court may go beyond this and impose obligations other than that of payment of money for the proper support and maintenance of the wife.

There is no doubt that plaintiff had the right to charge her husband with her necessaries of life and that recovery could be had therefor. No award of a court of equity was necessary to establish this right. Nothing was accomplished by the declaration of that right. The provision relating thereto therefore had no proper place in the decree.

I am of the opinion that the power of the court in such instances as this should not be extended beyond the allowance of sufficient money to provide adequate support and maintenance.

This court, I think, has laid down a sound rule for the guidance of the court with regard to awards in such cases as this in Chapman v. Chapman, *supra,* as follows: "We think that the judgment of the district court should be reversed and the cause remanded with instructions to receive such additional competent evidence pertinent to the subject of alimony as may be offered by either party, and to award to the plaintiff such sums, to be paid to her periodically by the defendant, as shall appear to be within his ability to pay and be adequate for her suitable maintenance."

As pointed out the district court made an allowance of $50 a month. In the light of generally well-known present day economy the conclusion is inevitable that this award is insufficient for the maintenance of the plaintiff. The record before us however does not supply adequate information upon which this court could make a finding as to what would be sufficient.

246

The plaintiff has cross-appealed contending that the allowance is not sufficient. It is concluded that the cross-appeal has merit and accordingly this phase of the case should be remanded to the district court for the taking of evidence in order that finding may be made as to what would be adequate for plaintiff's suitable maintenance.

The next question is that of attorney's fee for plaintiff's attorney. The district court allowed a fee of $800. The objection is to this allowance in its entirety on the ground that courts are without power to award attorney's fees in cases of this character.

As to allowance of attorney's fees this court said in Higgins v. Case Threshing Machine Co., 95 Neb. 3, 144 N. W. 1037: "It is the practice in this state to allow the recovery of attorneys' fees only in such cases as are provided for by law, or where the uniform course of procedure has been to allow such recovery. As a general rule of practice in this state, attorneys' fees are allowed to the successful party in litigation only where such allowance is provided by statute." This pronouncement has received approval in State ex rel. Charvat v. Sagl, 119 Neb. 374, 229 N. W. 118; Voss v. Voss, 144 Neb. 819, 14 N. W. 2d 849; Shepard v. Shepard, 145 Neb. 12, 15 N. W. 2d 195; Hawkeye Casualty Co. v. Stoker, 154 Neb. 466, 48 N. W. 2d 623.

In the very nature of things, this not being a statutory proceeding or one whose procedure is controlled by statute, resort cannot be had to statute for authority for the allowance of attorney's fees. It becomes necessary to find the right, if at all, in some course of procedure.

In Kiddle v. Kiddle, 90 Neb. 248, 133 N. W. 181, 36 L. R. A. N. S. 1001, Ann. Cas. 1913A 796, it was said: "It is the settled rule in this court that in a suit by a wife for separate maintenance, or for alimony alone, the court may at any time during the pendency of the suit make allowance to the wife of a reasonable sum as suit

money, including attorney's fees, to be paid by the husband as the court may direct." As authority for this statement Earle v. Earle, *supra,* Cochran v. Cochran,. *supra,* Rhoades v. Rhoades, *supra,* and Brewer v. Brewer,. *supra,* are cited. Other cases are cited but they are not of importance on the point being made here.

The four cases cited can be regarded as being in point only on the theory that an award of maintenance in equity as here and an award of maintenance in a statutory action are to be regarded as alimony and that the power of the court to make allowances for costs and attorney's fees in the two instances is the same.

This being true, it follows that a uniform course of procedure has come into being whereunder attorney's fees are allowable in such cases as this. It must be said therefore that the district court did not err in making an award of attorney's fees for plaintiff's attorney. I do not under the facts and circumstances disclosed think that the fee is excessive.

The decree of the district court should be affirmed as to the award of a fee of $800 for plaintiff's attorney and as to costs. Otherwise it should be reversed and the cause remanded with directions to the district court to take evidence and to determine and make such allowances to plaintiff for her suitable support and maintenance as may appear proper in the light of such evidence and appropriate rules of law as set forth herein.

A suitable allowance should be made for the services of plaintiff's attorney in this court.