STATE, EX REL. JAMES V. CHARVAT, APPELLEE, V. ANTON SAGL ET AL., APPELLANTS.

FILED FEBRUARY 14, 1930. No. 27144.

*Richard O. Johnson* and *Charles E. Matson,* for appellants.

*George I. Craven,* contra.

Heard before GOSS, C. J., ROSE, GOOD, THOMPSON, EBERLY and DAY, JJ., and LANDIS, District Judge.

GOSS, C. J.

Respondents appeal from a final order, made May 11,. 1929, allowing a peremptory writ of mandamus in favor of James V. Charvat, the relator. This writ commands the respondents to allow relator, "accompanied by an attorney and an accountant, or either or both," to examine all books and records of the bank since May 7, 1923, in any way relating to certain specified matters.

Relator's connection with the Farmers & Mechanics Bank of Havelock began in 1922. He was its president until the spring of 1926, when another Havelock bank was consolidated with it. He then became vice-president and director of the bank but ceased to be an active executive and moved to Milligan, Nebraska. About the middle of April, 1928, the bank became impaired and was closed until about May 1, 1928, and reorganized. Relator had owned about three-fifths of its 250 shares of stock. By the reorganization plan all of the shares were canceled and fresh money to the amount of $50,000 was paid in, partly by the former stockholders and partly by new ones, each furnishing two dollars for one of the par value. Relator paid in $1,000 and thereafter and at the time of trial owned five shares but ceased to be an officer. Incidentally, we were told by counsel on the oral argument that the bank was again taken over by the banking department late in June, 1929,. and is now under the control of a receiver.

While relator was an officer of the bank, certain real properties were taken by the bank from time to time as security. Some of the titles, at least, were taken in relator's name and the property dealt with as to third parties as if it were his, but most, if not all, of the accounts kept on the bank records; so that, particularly as between the bank and himself, he was concerned as to the status of such accounts and in the securing and preservation of evidence to show that he was not acting for himself but as trustee for the bank in connection with these items. At the time of

the trial some, but not all, of these properties were in litigation.

It seems from the evidence that the bank gave him permission personally to examine the records and accounts of the bank, but when, on November 17, 1928, he orally requested to examine them with the aid of his attorney, and when, on November 23, 1929, a very complete written demand, shown in the evidence, was made on the bank to allow an examination, not only as to the specified trust items, heretofore referred to, but also "to ascertain and determine the true condition of the affairs of said Farmers & Mechanics Bank, Havelock, Nebraska, a corporation, and of the management of its business, the value and nature of said stockholder's interest thereon, and the manner, skill and fidelity with which his interests as a stockholder are and have been guarded and protected," the demands, in the terms in which they were put, were refused. The officers of the bank felt that, in the current nervous state of the customers of banks, an examination participated in by others than the relator might embarrass the bank. This suit followed upon its refusal and was tried on the pleadings supported by evidence.

"A mandamus proceeding in Nebraska is an action at law." *State v. Farrington,* 86 Neb. 653; *State v. Porter,* 90 Neb. 233; *State v. Farmers Irrigation District,* 116 Neb. 373. So a defeated party, in a mandamus proceeding, must file a motion for a new trial in the trial court in order to review facts upon which he was refused relief. Respondents duly filed their motion for new trial in the district court and it was overruled. The judgment of the district court from which respondents appealed carefully limited the right of inspection of the bank's records by relator, accompanied by an attorney and accountant, to those records having to do with the so-called trust matters. It specified the particular properties so involved. Indeed, it provided that any other information so obtained "which has no relation to said property and said causes of action shall not be disclosed to any person or persons whatsoever for any

purpose." The record shows no exception taken by the relator to this order by motion for a new trial or otherwise and shows no cross-appeal by him. So, while much of the briefs and oral arguments were devoted to the legal right of relator as a stockholder to an inspection of the records of the bank to ascertain the condition of the bank and the manner, generally, with which its officers have discharged their duties, we cannot give the relator any relief as to that part of the judgment which excluded him from an examination of the records of the bank generally. We shall consider that phase of the law only as to its effect on the relief the trial court actually granted him.

In some states the statutes provide specifically for inspection of the records of a corporation by a stockholder. Our statutes are silent on that subject.

At common law a stockholder has the right to inspect the books of a corporation at reasonable times and for proper purposes. Cook, Stock and Stockholders (3d ed.) sec. 511; 6 Thompson, Corporations (3d ed.) sec. 4525; cases in notes in 45 L. R. A. 446, and 20 L. R. A. n. s. 185; *Varney v. Baker*, 194 Mass. 239; *Klotz v. Pan-American Match Co.*, 221 Mass. 38; *Guthrie v. Harkness*, 199 U. S. 148; *Woodworth v. Old Second Nat. Bank*, 154 Mich. 459.

In *Guthrie v. Harkness, supra,* the United States supreme court affirmed a judgment of the supreme court of Utah, ordering a national bank to allow a stockholder of the bank to inspect the books, saying: "The possibility of the abuse of a legal right affords no ground for its denial, and while an examination of the books of a corporation should not be granted for speculative or improper purposes, it should not be denied when asked for legitimate purposes;" and "There can be no question that the decisive weight of American authority recognizes the common-law right of the shareholder, for proper purposes and under reasonable regulations as to time and place, to inspect the books of the corporation of which he is a member;" and, again, "The right of inspection rests upon the proposition that those in charge in the corporation are merely the agents of the stockholders who are the real owners of the property."

We are of the opinion that the common-law rule that a stockholder has the right to inspect the books of a state bank at reasonable times and for proper purposes is in effect here.

It is suggested that, because the trial court refused to allow relator to inspect all the books of the bank and limited the inspection to those involved or to be involved in questions arising out of his relations with trust properties where the interests of the bank and of third parties were concerned, the trial court erred. Under the common-law rule he might, under certain circumstances, have been entitled to see all the books. We are not deciding that point here. But it would seem reasonable to say that, if he were entitled to all that was in fact allowed him, he ought not to be penalized for asking more than the district court found he was entitled to. The late Judge Deemer stated this to be the rule, and we adopt it: "The fact that a stockholder, in demanding permission to inspect the books of the corporation, asked for some that he was not entitled to see, does not justify a refusal to permit him to see any of the books." *Ellsworth v. Dorwart*, 95 Ia. 108.

It is also argued that the trial court erred in ordering that relator's attorney and accountant might aid him. On that point the case last cited announced: "A stockholder is entitled to have his attorney and stenographer accompany him and aid him when he decides to examine the books of a corporation." Assuming the good faith and conduct of the relator and of his attorney, as found by the district court, and that the examination would so proceed as not to interfere with the business of the bank, we think the order of the court was proper in that respect.

One of the chief points stressed by the bank is that mandamus is not the proper remedy. Under section 9224, Comp. St. 1922, the writ may issue to any "corporation, board or person, to compel the performance of any act which the law specially enjoins as a duty resulting from an office, trust or station." Long ago the law progressed past the point where the writ was exercised only against

those engaged in governmental affairs. It is necessary to refer only, among a multitude of cases that might be cited, to those cases, heretofore quoted, where mandamus was the form involved. Section 9225, Comp. St. 1922, provides: "This writ may not be issued in any case where there is a plain and adequate remedy in the ordinary course of the law." It is argued that the relator had an adequate remedy at law in his power to take the depositions of those in charge of the records of the bank and in the power granted under section 8901, Comp. St. 1922, and following sections, relating to the inspection and copy of books and papers. But these remedies are of value only in a pending case and between the parties thereto. Even there their practical adequacy is often demonstrably ineffective. For the purposes of discovering the true status of the accounts of the bank and of enabling the relator to allege or to prove them with certainty, the method by deposition or by section 8901 is inadequate. The remedy afforded by a bill of discovery is no longer in use in this state. The statutory procedure for the perpetuation of testimony would not avail in the circumstances involved here. There was no plain and adequate remedy at law, as contemplated in the statute, so as to prevent relator from resorting to mandamus.

Respondents cite *Cincinnati Volksblatt Co. v. Hoffmeister,* 62 Ohio St. 189, as authority that mandamus is not the proper remedy here but that injunction should have been used, as it was there. The Ohio mandamus statute is like ours; but the court held: "Injunction is the proper form of remedy to enforce the right of a stockholder in a private corporation, given by section 3254, Revised Statutes, to inspect the books and records of the corporation." The court thereupon affirmed a judgment enjoining the publishing company from preventing its stockholders from inspecting its books. We have no such statute as that of Ohio, expressly granting such inspection. It might be noted that the court in that case held further that "as incident to such right is the right to have such inspection by a proper agent, and to take copies from such books and records,"

although such right was not expressly set forth in the statute.

On the trial, under the authority of section 9233, Comp. St. 1922, the court took evidence as to damages and the peremptory writ contained a judgment for relator against respondents for $1,040 damages, "$1,000 of which is allowed as a reasonable attorney's fee for plaintiff's attorney, and $40 of which is other damages which plaintiff has sustained." There is evidence to justify both of these amounts; but the item for the damages on account of the fee for the attorney is challenged by the respondents on the ground that the law does not permit it to be considered as an element of damages.

It has been repeatedly held in this court that, since the attorney fee law was repealed by an act in effect as of June 1, 1879, a provision in a note for such a fee is invalid. *Security Company v. Eyer*, 36 Neb. 507, and cases there cited. In tort actions, except where specifically provided by statute, attorney's fees are not recoverable. *Winkler v. Roeder*, 23 Neb. 706. In *Higgins v. Case Threshing Machine Co.*, 95 Neb. 3, Reese, C. J., said for the court: "It is the practice in this state to allow the recovery of attorneys' fees only in such cases as are provided for by law, or where the uniform course of procedure has been to allow such recovery. As a general rule of practice in this state, attorneys' fees are allowed to the successful party in litigation only where such allowance is provided by statute." Relator has cited no statute or decision of this court, nor do we know of any, authorizing the allowance of the fee in the instant case. In that respect the judgment of the district court is erroneous.

For the reasons stated, the judgment of the district court is modified to the extent of eliminating the attorney fee of $1,000 allowed the relator therein, and as thus modified the judgment is affirmed.

AFFIRMED AS MODIFIED.