HAWKEYE CASUALTY COMPANY, A CORPORATION, APPELLANT, v. JOE H. STOKER ET AL., APPELLEES.

48 N. W. 2d 623

Filed June 22, 1951. No. 32948.

*Gross, Welch, Vinardi & Kauffman,* and *H. B. White,* for appellant.

*Richard A. O'Connor, Cook & Cook,* and *McCormack & McCormack,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is an action instituted on August 10, 1949, by Hawkeye Casualty Company, a corporation, under the Uniform Declaratory Judgments Act of the State of Nebraska against Joe H. Stoker, Thelma I. Stoker, Leonard Bertelsen, Louis Bertelsen, Quentin Peterson, Helen Foreman, Delores Wahlstrom, Lila May Woodin, and Steven Hill, defendants, to have determined the liability of the plaintiff, if any, under a policy of liability insurance issued to the defendant Thelma I. Stoker. The Stokers are husband and wife. Plaintiff, in an original petition based on specific grounds, declared that there was no liability and prayed for an adjudication accordingly. By amendment to the petition the plaintiff alleged additional specific grounds for nonliability under the policy and prayed for adjudication in conformity with the amendment.

The case came to trial and certain issues of fact were submitted for determination to a jury. These issues were decided in favor of the defendants whereupon, among other things which will be considered later herein, the court determined that there was liability under the policy and adjudicated accordingly.

From this and the adjudication on the other questions and an order overruling a motion for new trial duly and timely filed the plaintiff has appealed.

The factual situation out of which the action flows is substantially the following: The plaintiff is an Iowa corporation engaged in the business of issuing automobile liability insurance policies. The defendants Stoker are residents of Council Bluffs, Iowa. On August 21,

1947, the plaintiff issued to Thelma I. Stoker a standard automobile liability insurance policy covering a 1936 Plymouth automobile. The policy contained what is commonly called an omnibus clause, that is a clause which extended the coverage of the policy to anyone using the automobile with the consent of the insured. This clause of course gave coverage to Joe H. Stoker when he was using the automobile with the consent of Thelma I. Stoker.

On or about August 24, 1947, the defendant Joe H. Stoker was operating the insured automobile in Douglas County, Nebraska, wherein with the automobile he had an accident. He promptly made report of the accident to the plaintiff.

The defendants Bertelsen, the defendant Peterson, and the defendant Helen Foreman, as a consequence of the accident, brought action against Joe H. Stoker for damages. Leonard Bertelsen was joined as a defendant in the action instituted by Helen Foreman but that is of no importance here. The other named defendants apparently asserted claims for damages but also apparently did not institute actions. After commencement of the actions the plaintiff assumed their defense as was its duty if there was liability under the terms of the policy, and retained the law firm of Gross and Welch to represent the defendants Stoker in the actions.

On January 28, 1949, the plaintiff secured from Joe H. Stoker a reservation of rights agreement the effect of which was to permit the plaintiff to investigate and defend the actions against Joe H. Stoker without waiver of right to assert nonliability under the policy. Later and on May 23, 1949, the plaintiff secured a like reservation of rights from both Joe H. Stoker and Thelma I. Stoker.

The alleged ground of nonliability contained in the original petition is that by the terms of the policy there is no liability unless the insurance is written and carried in the name of the sole owner of the automobile. The

plaintiff says, and on this ground it seeks avoidance of liability and to avoid the policy, that Thelma I. Stoker was not the sole owner of the automobile but that on the contrary Joe H. Stoker was the owner.

The alleged ground of nonliability contained in the amendment, which amendment was filed by leave of court January 19, 1950, is that the defendants Stoker violated and breached the cooperation clause of the policy, the important part of which insofar as this case is concerned is the following: "The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of accident."

The substantial contention in this connection is that defendants Stoker made settlement and allowed judgments to be entered as follows: In favor of Quentin Peterson for $8,000, in favor of Louis Bertelsen for $5,000, and in favor of Leonard Bertelsen for $3,000, without the consent of plaintiff.

These judgments were entered on October 4, 1949. In the case of Quentin Peterson v. Joe H. Stoker, the entry representing the settlement and judgment is as follows: "Jury waived, trial to the court, judgment for plaintiff in the sum of $8,000.00 and costs. Complete record waived." The other two are the same except as to amounts of judgment. There was in the true sense no trial. No witness appears to have been sworn and no evidence was received. It clearly appears that the judgments were entered pursuant to agreement among the attorneys representing the parties and with consent of Joe H. Stoker.

The defendants Bertelsen, the defendant Foreman, and the defendant Peterson were made parties to the action because of the fact that they had instituted action against Joe H. Stoker and to them the plaintiff would be required to respond in case the defendant Joe H. Stoker was liable in damages, of course within the limits

of the policy, which limits it may be well to state were for bodily injuries, $5,000 for each person with a maximum of $10,000 for each accident and a maximum of $5,000 for property damage for each accident.

The defendants have contested the action on various grounds. The first to be noted here is that the plaintiff was without right at the time this declaratory judgment action was instituted to maintain the action. This question was not presented to the district court. It therefore will be passed without further consideration, except as it may be referred to later in determination of the character and quality of a declaratory judgment action, a determination made necessary by certain contentions of the plaintiff. The second is that the rule that the insured is required to have an insurable interest in the property insured has no applicability to indemnity policies. The third is that the question of whether or not Thelma I. Stoker was the sole owner of the automobile was one of fact and the fact having been determined by a jury favorable to her under proper instructions the finding is conclusive on that point. The fourth is that a provision in a policy forbidding the insured to settle claims without insurer's consent is limited to cases where the insurer performs its contract to defend actions against the insured. The fifth is that in case an insurer claims a breach on the part of the insured of the cooperation clause of a policy, the insurer must show not only a breach but also that the breach operated to its prejudice. The sixth is that the plaintiff is estopped to assert a breach by the insured by its retention and failure to timely tender a refund of premiums. The tender of refund of premiums was not made until January 19, 1950.

On the part of plaintiff, it was and is here contended that under the Uniform Declaratory Judgments Act it was not proper to submit the question of the ownership of the automobile to a jury as in a law action. It does not contend that the question of ownership was not a

question of fact presented for determination in the case nor that the court erred with regard to the burden of proof in this connection but it contends that the question of fact was not one properly submissible to a jury. The ground of the contention is that the action is sui generis and essentially equitable in character.

It appears appropriate to consider first the questions presented under the Uniform Declaratory Judgments Act. The following are pertinent provisions of the act:

"Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree." § 25-21,149, R. S. Supp., 1949.

"Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder." § 25-21,150, R. R. S. 1943.

"A contract may be construed either before or after there has been a breach thereof." § 25-21,151, R. R. S. 1943.

"The enumeration in sections 25-21,150, 25-21,151 and 25-21,152 does not limit or restrict the exercise of the general powers conferred in section 25-21,149, in any proceeding where declaratory relief is sought, in which a judgment or decree will terminate the controversy or remove an uncertainty." § 25-21,153, R. R. S. 1943.

"When a proceeding under this act involves the determination of an issue of fact, such issue may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court in which the proceeding is pending." § 25-21,157, R. R. S. 1943.

"This act is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and is to be liberally construed and administered." § 25-21,160, R. R. S. 1943.

The action here was for a declaratory judgment after claimed breach and this the act specifically authorizes.

An issue of fact as to whether or not Thelma I. Stoker was the sole owner of the automobile in question was presented by the petition. It is difficult to see how it may be said that it was improper under the act to submit this question to a jury, especially in view of the pronouncement that the act is to be liberally construed and administered. The act by its terms has application both substantively and adjectively and we think that the provision for liberal construction applies adjectively as well as substantively. See, 13 A. L. R. 2d 777 et seq.; Fidelity & Casualty Co. of New York v. Groth, 47 N. Y. S. 2d 68; Crollard v. Northern Ins. Co., 240 Mo. App. 355, 200 S. W. 2d 375; Utica Mut. Ins. Co. v. Beers Chevrolet Co., Inc., 250 App. Div. 348, 294 N. Y. S. 82; State ex rel. United States Fire Ins. Co. v. Terte, 351 Mo. 1089, 176 S. W. 2d 25; American Employers Ins. Co. v. Wentworth, 90 N. H. 112, 5 A. 2d 265.

The plaintiff contends that there was no question of ownership to be determined by a jury for the reason that on the trial it was conclusively shown that Thelma I. Stoker was not the sole owner. As to this, the automobile was registered in Iowa and the plaintiff agrees that the law of Iowa is applicable to this situation. It was there registered in the name of Thelma I. Stoker and had been so registered since 1940.

Under Iowa law the registration certificate of an automobile is prima facie evidence of ownership of an automobile which may be overcome by other evidence. Abraham v. Hartford Fire Ins. Co., 215 Iowa 1, 244 N. W. 675; Craddock v. Bickelhaupt, 227 Iowa 202, 288 N. W. 109, 135 A. L. R. 474.

The Iowa court in the Abraham case held that, where there was a dispute as to true ownership between one who claimed to be the owner and an insurance company defending on the ground of lack of sole ownership against liability for loss on account of theft of the automobile, the question of ownership was one of fact for a jury.

That was a case where the claim was made by a person claiming ownership although the certificate of registration was in another. In this case the automobile was registered in the name of Thelma I. Stoker and the plaintiff contends that she was not the sole owner but that it was owned by Joe H. Stoker.

The facts in this connection as disclosed by the record are that this automobile was purchased in 1940 by exchange of another and with funds drawn from a joint bank account of the Stokers. It was registered by Thelma I. Stoker soon thereafter and it remained so registered up to and after the accident. It was used for the most part by her in business which she was conducting through the intervening years. She serviced it for the most part. It was used and serviced but little by Joe H. Stoker. On the trial Thelma I. Stoker testified that the automobile belonged to her. Joe H. Stoker likewise testified.

As against this the plaintiff had identified two statements, one signed by Joe H. Stoker and one by Thelma I. Stoker. The former was dated April 26, 1949, and the latter May 23, 1949. This one was signed in Council Bluffs, Iowa. It was substituted by the plaintiff for a like one the same in substance but unsatisfactory in form which had been signed the previous day. Each

of the statements contains a history of the acquisition of this automobile.

The former contains the following: "On August 23, 1947, when the car was involved in an accident on Highway #275, near Valley, Nebraska, the car did not have a mortgage or lien of any type against the car, and at that time I considered this car to be my own car."

The latter, near the end, contains the following: "In the purchase of any of the above mentioned cars, none of my money was used and I never considered myself the owner of any of these cars."

The Stokers respectively admitted the signing of the two documents. They however testified to the surrounding facts and circumstances which together with their positive testimony as to ownership was sufficient to present to a jury a controverted question of fact as to ownership.

What the Stokers testified to in relation to ownership notwithstanding the instruments introduced by the plaintiff was clearly admissible under Iowa law.

In Abraham v. Hartford Fire Ins. Co., *supra,* the questions of the knowledge of the content and effect of written instruments were brought into question. Speaking to that subject the court said:

"The appellant contends that the court erred in permitting appellee and her witnesses to testify in contradiction of the written statements made by the appellee and in contradiction of the written transfer of the certificate of registration.

"We do not think there is merit in the appellant's contention at this point. The question was essentially one of fact as to whether or not the appellee was the unconditional and sole owner of the automobile at the time the policy of insurance was written."

The conclusion reached is that there was no error in the submission of the question of ownership of the automobile to a jury.

The next question is that of whether or not the issue

was submitted under proper instructions. The plaintiff contends it was not.

The policy contains the following: "Except with respect to bailment lease, conditional sale, mortgage or other encumbrance the named insured is the sole owner of the automobile, except as herein stated: No exceptions."

The policy also contains the following: "By acceptance of this policy the named insured agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance."

Particularly speaking the plaintiff contends that the instructions do not contain a sufficient and proper definition of the term "sole owner."

In this connection it is to be observed that the plaintiff submitted no proposed instruction in definition of "sole owner." It follows therefore that if the definition of "sole owner" was reasonably sufficient and not incorrect the contention of plaintiff may not be sustained since if it desired a more specific definition of this issue it was its duty to make request therefor. Plumb v. Burnham, 151 Neb. 129, 36 N. W. 2d 612; In re Estate of Hunter, 151 Neb. 704, 39 N. W. 2d 418.

Sole ownership was defined in instruction No. 9 as follows: "Sole ownership is defined to mean the person who holds the legal title to said motor vehicle and is in fact the actual, true and real owner of said motor vehicle." This conforms well to the lexicographer's definition of "sole" and of "ownership."

In truth it appears that the plaintiff inconsistently urges that the term requires definition. It was used in the policy without definition and it becomes clear that plaintiff expected Thelma I. Stoker to understand its meaning without definition. It hardly seems reasonable to expect a less acute power of understanding on the part of the jury than of this laywoman.

The contention that the jury was not properly instructed on the question of sole ownership is without merit.

There is another reason why the defense of misrepresentation as to the ownership of the automobile is not available to the plaintiff. There was no tender of refund of unearned premiums made, as hereinbefore pointed out, until January 19, 1950.

In Gosnell v. Camden Fire Ins. Assn. (Mo. App.), 109 S. W. 2d 59, it was said: "Before a defendant may make such a defense as that of misrepresentation or breach of warranty, it must not only have pleaded the same but must have tendered back the unearned premiums and kept such tender good."

In Thomas v. American Automobile Underwriters Agency, Inc. (Mo. App.), 5 S. W. 2d 660, it was said: "It appears to be recognized as a general rule that a return of the premium is not essential to the avoidance of an insurance contract, nor is its mere retention a waiver, especially where the insured was guilty of fraud in obtaining the insurance. But the rule is otherwise where the ground of avoidance goes to the root of the whole insurance contract and avoids it from the beginning, so that no risk ever attached, and where there was no fraud in obtaining the insurance."

The general rule is stated in 45 C. J. S., Insurance, § 716, p. 696, as follows: "Insurer is precluded from asserting a forfeiture where, after acquiring knowledge of the facts constituting a breach of condition, it has retained the unearned portion of the premium or has failed to return or tender it back with reasonable promptness, especially where the nature of the breach or ground for forfeiture is of such character as to render the policy void from its inception * * *."

The conclusions arrived at effectually dispose of all matters presented by the petition before it was amended to include the contention that the terms of the policy

were violated for failure of cooperation with the plaintiff in defending actions for damages indemnifiable under the terms of the policy.

It appears that it should be pointed out here that the claim of noncooperation came after settlement and the entry of judgment in the three actions which have been mentioned. No claim was made that the Stokers failed or refused to cooperate in any respect with regard to the defense of the actions on their merits or otherwise until after the commencement of this declaratory judgment action. This is made clear by exhibit No. 9, this being a letter dated September 20, 1949, from Leslie Husted to Richard A. O'Connor, attorney for the Stokers at the time the judgments were entered.

The effect of this and the clear declaration of the petition for declaratory judgment was to say that the policy was void and the Stokers had no insurance coverage since the policy was not issued to the true owner or, in the words of the policy, the "sole owner."

On the basis of this contention the plaintiff obtained from the Stokers the reservation of rights agreements which would permit it to defend without waiver of the right to assert that the policy was void and there was no coverage.

Having concluded that the policy is not void and that there was coverage under the policy may the plaintiff be heard to say that there was noncooperation in the respects mentioned with regard to the defense of the actions on the part of the Stokers?

The plaintiff substantially contends that under the circumstances as shown by the record and the reservation of rights agreements it had the right to defend the actions and the Stokers were under obligation to allow them so to do, and that withdrawal from such defense on demand of the Stokers amounted to noncooperation on their part within the meaning of the policy; also that settlement and consent to judgment relieved it from liability.

It is unquestionably true that with the consent of the

Stokers the plaintiff had the right to defend these actions without waiver of right or estoppel to defend against liability under a policy of insurance. Rodenkirk v. State Farm Mutual Auto Ins. Co., 325 Ill. App. 421, 60 N. E. 2d 269; McCann v. Iowa Mutual Liability Ins. Co., 231 Iowa 509, 1 N. W. 2d 682; Wigington v. Ocean Accident & Guarantee Corporation, 120 Neb. 162, 231 N. W. 770; Myers v. Ocean Accident & Guarantee Corporation, 99 F. 2d 485; Salonen v. Paanenen, 320 Mass. 568, 71 N. E. 2d 227; Great American Indemnity Co. v. City of Corpus Christi (Tex. Civ. App.), 192 S. W. 2d 917.

None of these cases and none cited and examined holds however that where an insurer disclaims liability under a policy of insurance either on the ground that the policy is void or that the policy does not furnish or afford coverage it may of right exact of the insured a reservation of rights and thus become entitled to defend an action without waiver of or estoppel to assert nonliability under the policy. The two cases cited last above, which appear in plaintiff's brief, make this point clear.

In Salonen v. Paanenen, *supra,* it was said: "We are not to be understood as holding that an insurer may reserve its rights to disclaim liability in a case and at the same time insist on retaining control of its defence."

. In Great American Indemnity Co. v. City of Corpus Christi, *supra,* it was said: "The unequivocal denial of all liability to pay a loss under its insurance policy, in the absence of a special contract with the assured, disqualifies the insurance company from defending a suit against the assured for the recovery of damages which the insurance company says is not covered by its policy. The insurance company and the assured may enter into a special contract relating to the defense of a claim asserted against the assured by a third party, based upon the premise that the liability of the insurance company is doubtful or not admitted, but after an absolute and continued assertion of non-liability, the assured is not required to accept such a contract, American Fidelity &

Casualty Co. v. Williams, Tex. Civ. App., 34 S. W. 2d 396, writ refused, and may treat the denial of liability as a breach of the insurance contract and proceed to defend the claim by securing the services of attorneys of its own selection, as was done by the City in this case."

The rule in this case appears to apply to the facts in the case at bar. The parties here had a special agreement (reservation of rights agreement) based upon the premise that the liability of the insurance company was doubtful. Later however by its petition filed in the case at bar, and particularly paragraphs 11 and 12 and the prayer, the denial of liability became unequivocal.

If therefore the case last quoted from is to be accepted as precedent for the determination herein it must be said that the Stokers had the right to treat the denial as a breach of the insurance contract and proceed to defend the claim by securing the services of an attorney of their own selection.

The cases are numerous which hold that where an insurance company on the ground of nonliability repudiates its obligation to defend, the insured has the right to make his own defense. Fullerton v. United States Casualty Co., 184 Iowa 219, 167 N. W. 700, 6 A. L. R. 367; Rosenberg v. Maryland Casualty Co., 3 N. J. Misc. 1132, 130 A. 726, (This case was affirmed without opinion by the Court of Errors and Appeals in 102 N. J. Law 724, 132 A. 923.); Jaloff v. United Auto Indemnity Exchange, 121 Or. 187, 253 P. 883; Jones v. Southern Surety Co., 210 Iowa 61, 230 N. W. 381; Thomas Kilpatrick & Co. v. London Guarantee & Accident Co., 121 Neb. 354, 237 N. W. 162; Socony-Vacuum Oil Co. v. Continental Casualty Co. (Ohio App.), 67 N. E. 2d 836; American Fidelity & Casualty Co., Inc. v. Williams (Tex. Civ. App.), 34 S. W. 2d 396.

Under the singular facts of this case as shown by the record it appears that there are cogent reasons why the rule in Great American Indemnity Co. v. City of Corpus Christi, *supra*, should have application here. Here not

only did the insurer ultimately unequivocally deny liability on the policy but it instituted action wherein it repudiated liability, which action was instituted against the Stokers by the attorneys who were representing them in the damage cases.

In the very nature of things, after this happened, could it be expected of the Stokers that they would further entrust the defense of their damage cases to attorneys employed by the insurer after the insurer caused such attorneys to take a position directly opposed to their interests?

We think not, especially in view of the following paragraphs from the sixth section of the Canons of Professional Ethics adopted by this court on September 20, 1937, the design of which canons was to guide the members of the legal profession and to protect the rights of litigants in their relations with legal representatives:

"It is unprofessional to represent conflicting interests, except by express consent of all concerned given after a full disclosure of the facts. Within the meaning of this canon, a lawyer represents conflicting interests when, in behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose.

"The obligation to represent the client with undivided fidelity and not to divulge his secrets or confidences forbids also the subsequent acceptance of retainers or employment from others in matters adversely affecting any interest of the client with respect to which confidence has been reposed."

It is concluded that in this action the plaintiff may not be heard to say under the circumstances that the Stokers failed to cooperate in the defense of the damage actions by discharging the attorneys retained by the plaintiff and by retaining an attorney of their own choice to conduct the defense.

The next contention to be considered is that of whether or not under the circumstances the insurer is bound

by the judgments which were entered against Joe H. Stoker in the damage actions.

In Fullerton v. United States Casualty Co., *supra,* an Iowa case, in considering this subject it was said: "We are cited to a clause of the contract to the effect that the right of the insured to maintain an action against the company is limited to cases of 'loss actually sustained and paid in money in satisfaction of a judgment after trial of the issue,' and it is said that the payment to Mrs. Jacobson by plaintiff was by way of a settlement, and not in satisfaction of a judgment. But this provision can avail the appellant nothing in this case. It repudiated its obligation to assume and carry the defense to final judgment; and, having abandoned the case, it left the assured at liberty to take up the defense and contest the claim to final judgment, or, if so advised, to make the most favorable settlement possible."

In Jones v. Southern Surety Co., *supra,* an Iowa title insurance case, it was said: "Defendant refused to defend the cancellation suit. Thereby defendant necessarily waived its right, as well as violated its duty, to defend. By so violating its duty and waiving its right to defend, defendant authorized the insured to conduct the defense in good faith, and thereunder in good faith to make such a settlement as ordinary or reasonable prudence and caution might dictate to be advisable, and waived the right to demand prosecution of the action to final judgment."

In the case at bar there can be no question of good faith. There could be no question of good faith except as to the amount of the judgment. On this question the plaintiff made no substantial showing and it resisted the efforts of the defendants to show that the judgments were reasonable.

In Thomas Kilpatrick & Co. v. London Guarantee & Accident Co., *supra,* this court said: "An indemnity insurance company obligated to defend suits against the insured, even if groundless, breaches its contract by a

denial of liability as to an accident and thereby releases the insured from an agreement in the policy not to settle any claim. In such a case, the insured is not compelled to go to trial and risk the hazard of a large judgment, but is justified in making a favorable settlement."

Socony-Vacuum Oil Co. v. Continental Casualty Co., *supra*, is a case defining the rights of an insured where in very much the same manner as here the insurer at first assumed the defense of actions and later as here denied liability. In the opinion it is said: "We conclude, therefore, that Continental committed a breach of its obligations under the policy of indemnity insurance with the Oil Company by reason of its letter of August 9, 1939, which necessitated the Oil Company to act in its own defense with regard to the claim of Harper and that all reasonable expense thereby incurred would constitute the measure of damages suffered by it as a result of such breach."

In American Fidelity & Casualty Co., Inc. v. Williams, *supra*, it was said: "It is a fundamental rule of the law of contracts that, when one party repudiates the agreement and refuses to be bound by material obligations, the other party may accept such repudiation as final and is not required to further regard the obligations imposed upon him thereby."

Further in the opinion the following from 34 C. J., Judgments, § 1463, p. 1031, was quoted with approval: "Where a person who is responsible over, either by operation of law or express contract, to another for whatever may be recovered in a suit against such other, has notice of a suit against the latter and an opportunity to appear and defend, the judgment rendered in the action, if obtained without fraud, will be conclusive on him, whether he appeared or not."

It is concluded that, bad faith or fraud not appearing, the Stokers were within their legal rights and were not acting in violation of any policy provision by which they were bound in making the settlements and per-

mitting and causing the judgments to be entered in the three actions for damages.

On the same day that the decree was entered herein the defendants Bertelsen and the defendant Peterson filed a motion for an order taxing as part of the costs against the plaintiff an attorney's fee for their attorneys. The motion was later amended but in a manner not important here.

Later the defendants Stoker filed a motion for an order taxing as a part of the costs an attorney's fee for their attorney for service performed in this action.

The transcript contains no ruling on the motion of the Stokers. It however does contain an order sustaining the motion of the other defendants and allowing a fee in the amount of $1,500. From this order the plaintiff has appealed.

The apparent theory on which the fee was allowed was that it was proper under section 44-359, R. S. 1943, as follows: "In all cases where the beneficiary, or other person entitled thereto, brings an action at law upon any policy of life, accident, liability, sickness, guaranty, fidelity, or other insurance of a similar nature, or upon any certificate issued by a fraternal beneficiary association, against any company, person or association doing business in this state, the court, upon rendering judgment against such company, person or association, shall allow the plaintiff a reasonable sum as an attorney's fee in addition to the amount of his recovery, to be taxed as part of the costs. If such cause is appealed, the appellate court shall likewise allow a reasonable sum as an attorney's fee for the appellate proceedings."

In resistance of the allowance the plaintiff says that the statutory provision has no application to a case of this kind, and further the policy being an Iowa contract it is controlled by the laws of Iowa which state has no law authorizing the assessment of attorney's fees in actions involving liability under contracts of insurance.

Passing for the moment the question of whether or

not the Iowa law is controlling in the premises, it is pointed out here that before a litigant may claim the right to have an attorney's fee assessed in a case statutory authority or a uniform course of procedure must be found therefor.

In Higgins v. Case Threshing Machine Co., 95 Neb. 3, 144 N. W. 1037, it was said: "It is the practice in this state to allow the recovery of attorneys' fees only in such cases as are provided for by law, or where the uniform course or procedure has been to allow such recovery. As a general rule of practice in this state, attorneys' fees are allowed to the successful party in litigation only where such allowance is provided by statute." This pronouncement was followed in State ex rel. Charvat v. Sagl, 119 Neb. 374, 229 N. W. 118; Voss v. Voss, 144 Neb. 819, 14 N. W. 2d 849; Shepard v. Shepard, 145 Neb. 12, 15 N. W. 2d 195.

Attention has been directed to no uniform course of procedure for the allowance of attorney's fees in cases such as this. The authority for allowance must therefore be found, if indeed it may be found, in the statute.

It will be observed that the statute does not limit the right to allow attorney's fees to actions arising out of contracts entered into in this state but extends to insurers doing business in this state. The decisions already referred to on the question of the authority to allow attorney's fees make clear that the authority to allow attorney's fees is procedural though in part controlled by statute. It would appear reasonable therefore to say that an allowance of attorney's fees would be proper under this statute in a case otherwise contemplated by the statute on a sufficient showing that the company was doing business in this state.

The record here however is insufficient upon which to determine whether or not this plaintiff within a legal sense was doing business in the State of Nebraska. It follows that this phase of the statute can avail these defendants nothing.

Turning again to the statute it is to be further observed that actions contemplated are those where the *beneficiary or other person entitled thereto brings an action at law.*

As hereinbefore indicated the present action was under the Uniform Declaratory Judgments Act in part an action at law and properly so regarded by the district court.

It was not however one wherein these defendants brought action as beneficiaries or as other persons entitled to bring action at law on the policy. Undeniably the action was not brought by them or any of them.

Even if it be said that their answers amounted to action against the plaintiff still no statute or decision of either the State of Iowa or of this state has been cited which grants these defendants the right to maintain in this case action which would authorize the allowance of a fee to their attorneys. To the phase of the case which amounted to a law action these defendants were neither necessary nor proper parties. That part of the action was between the plaintiff and the defendants Stoker.

Furthermore the policy limits the right of commencement of action against the plaintiff by parties in the situation of these defendants as follows:

"No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company.

"Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. Nothing contained in this policy shall give any person or organization any right to join the company as a co-defendant in any action against the insured to determine the insured's liability.

"Bankruptcy or insolvency of the insured or of the insured's estate shall not relieve the company of any of its obligations hereunder."

While this policy provision appears to grant to these defendants a right to maintain action against the plaintiff as judgment creditors of the defendants Stoker on failure of plaintiff to pay the judgments up to the limits of the policy it does not appear to grant them any rights in this action.

We conclude therefore that the court erred in taxing the attorney's fee.

The district court decreed that the plaintiff was indebted to the defendants Stoker in the amount of $10,000, which is the maximum liability under the policy for personal injuries, and that such indebtedness was for the benefit of the defendants Bertelsen and the defendant Peterson. It was ordered that this amount be paid into court for distribution to these three defendants.

We think the absolute requirement that this amount should be paid in to apply on these judgments is erroneous. It should be paid in, conditioned upon the right of the plaintiff to show, if it is able to do so, by appropriate pleading herein and proper and sufficient proof that there is another party or are other parties who has or have in whole or in part priority over these three judgments and for failure so to do this amount is ordered to be distributed to the parties the court finds are entitled thereto.

To this extent the decree is modified. It is otherwise affirmed.

The order allowing $1,500 as an attorney's fee for the attorneys for the defendants Bertelsen and the defendant Peterson is reversed. Costs are taxed to the appellant.

AFFIRMED IN PART, MODIFIED IN PART, AND IN PART REVERSED.